STATE OF CONNECTICUT *v.* LORRAINE RUCKER

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued January 2—decision released April 24, 1979

*Ronald E. Cassidento,* with whom, on the brief, was *Frederick W. Odell,* for the appellant (defendant).

*Arnold M. Schwolsky,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

LONGO, J.  In a substitute information to which a plea of not guilty was entered, the defendant was convicted by a jury of the offense of conspiracy to commit robbery in the first degree in violation of

§§ 53a-48 and 53a-134 (a) (2) of the General Statutes. The defendant appealed from the judgment rendered, alleging that the court erred in refusing to set aside the verdict as being contrary to law and against the evidence. In her preliminary statement of issues, she claims (1) that the prosecution's failure to reveal that sentencing of the principal witness and coconspirator was to be delayed until after the defendant's trial ended violated her right to a fair trial; (2) that the delay in sentencing created an inherently coercive situation compelling the state's chief witness to testify; and (3) that the testimony of the state's chief witness was so inconsistent and incredible that a conviction was improper as a matter of law.

From the evidence, the jury could have found the following: On November 22, 1976, the defendant, Lorraine Rucker, met with a friend, Arnold Grady, in her apartment, and proposed that they "rip off" the defendant's landlord, Solomon Greenspan, who the defendant knew carried large sums of rent money on the first of the month. On November 27, the defendant repeated the proposal to Grady in her apartment in the presence of Grady's brother and two friends. On December 1, in furtherance of the plan, the defendant gave Grady a ski mask and a sawed-off shotgun which she had hidden in her apartment. On that day, when the landlord entered the apartment building and had reached the second floor, the gun was fired by Grady and the landlord was fatally injured. An uncertain amount of money was taken from the landlord. The next day Grady threw the gun into the Connecticut River.

Following a police investigation, Grady was arrested on December 10, 1976, and, on the same

day, he confessed his guilt to the Greenspan murder. Grady implicated the defendant Rucker, who was immediately arrested and charged with conspiracy to commit murder. Thereafter, on December 28, Grady retracted his statement to the police concerning the defendant's participation in the plan to rob her landlord, explaining that he implicated her because he thought the defendant's brother had turned him in to the police. At the defendant's trial, however, Grady retracted his original retraction of the defendant's complicity in the plan to rob her landlord. Grady pleaded guilty to the felony murder on March 17, 1977. He was scheduled to be sentenced prior to the defendant's trial, but at his request sentencing was delayed until the defendant's trial had been completed. The defendant was convicted as charged and sentenced to serve a term of not less than ten years nor more than twenty years in prison. The instant appeal is from the judgment rendered.

The defendant first contends that the failure of the prosecution to reveal the postponement of Grady's sentencing until after the defendant's trial violated due process of law and denied to the defendant a fair trial under the sixth and fourteenth amendments. Pertinent to that claim are the following facts: In a discovery motion, the defendant's counsel requested, inter alia, all information or material which was exculpatory or favorable to the defendant, including all information relating to any understanding or agreements between any state witness and the state police regarding future sentencing recommendations as to any such witness. The state answered: "None." To a second motion for disclosure of government promises made or considered or offered to state's witnesses intended to

be called, the state answered: "The State has made no promises to anyone." The defendant correctly claims that if any such information existed it would have been the prosecutor's duty to reveal it under the ruling in *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); see *Giglio* v. *United States,* 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *United States ex rel. Annunziato* v. *Manson,* 425 F. Sup. 1272 (D. Conn. 1977).

In *Brady* v. *Maryland,* supra, the petitioner Brady and a companion, Boblit, were found guilty of murder in the first degree and both were sentenced to death. Their trials were separate, and Brady was tried first. He admitted his participation in the crime, but claimed that Boblit did the actual killing. Prior to trial, Brady's counsel requested the prosecution to allow him to examine Boblit's extra-judicial statements. Several statements were shown to him, but one in which Boblit admitted the actual killing was withheld by the prosecution. After Brady's trial, conviction and sentence, and after affirmance of his conviction on appeal, Brady moved for a new trial based on the newly discovered evidence favorable to the defendant, suppressed by the prosecution. The United States Supreme Court held that the suppression of that evidence by the prosecution in Brady's trial was a violation of the due process clause of the fourteenth amendment.

In *Giglio* v. *United States,* supra, the government's chief witness, who was the primary witness linking the defendant with the crime, was an accomplice of the accused on trial. Both had been charged with forging stolen government checks. The witness testified that he had not been told that if he implicated someone else, he would not be prosecuted. In sum-

mation, the government's prosecuting attorney stated that the witness received no promise that he would not be prosecuted if he testified. Subsequently, on a new trial based on newly discovered evidence, the government filed an affidavit disclosing that it had actually made a promise to the defendant that he would not be prosecuted if he testified for the government. The Supreme Court stated that the witness' credibility was an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury were entitled to know of it. See *United States* v. *Agurs,* 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). The court found a denial of due process where the government's case included false testimony concerning a promise of leniency to the witness, and the prosecution knew, or should have known, of the perjury. *Giglio* v. *United States,* supra, 154; see also *Napue* v. *Illinois,* 360 U.S. 264, 271, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

The defendant argues that these cases dictate that, as the prosecution did not reveal the fact that Grady's sentencing was to be delayed until after the defendant's trial, she did not receive a fair trial. We disagree. The witness Grady, at his own request, and upon the advice of his defense counsel, sought and obtained a continuance of the date for his sentencing in the case of *State* v. *Grady,* No. 41503, Superior Court, Hartford County. Grady, through the state's attorney, stated that he wished to have his sentencing judge aware of his testimony against the defendant Rucker with the expectation, perhaps, that the disposition of his own case would in some way be affected by his testimony against the defend-

ant.[1] The record does not reveal, as in *Giglio,* that any promise or agreement concerning leniency or any other subject was made by the state to Grady.[2] Moreover, nothing in the record indicates the existence of any false testimony in the defendant's trial, distinguishing this case from *Napue.*

On the record before us the prosecution had no duty to inform the defense that Grady's sentencing was being delayed. Moreover, the nonrevelation of this information did not impair the defendant's right to a fair trial or in any way restrict the defendant's ability to cross-examine Grady on that very point. The record clearly discloses that, at trial, the defense learned of the delay in Grady's sentencing. Defense counsel engaged in an extensive cross-examination of Grady as to his motives for testifying and inquired whether any consideration had been promised to him in return for his testimony against the defendant, to which inquiry Grady responded in the negative. Compare *State* v. *Corley,* 177 Conn. 243, 413 A.2d 826 (1979).

---

[1] Subsequent to Lorraine Rucker's trial, Grady received a sentence of not less than twelve years nor more than life to be served in the state's prison, a greater minimum and maximum sentence than that received by Lorraine Rucker.

[2] This factor clearly distinguishes the present case from *United States ex rel. Annunziato* v. *Manson,* 425 F. Sup. 1272 (D. Conn. 1977), a case relied upon by the defendant. In that case, the court, on the defendant's petition for habeas corpus, found that there had been both a violation of the *Brady* principles, and a denial of the right of confrontation, in the failure of the prosecution to reveal that the chief state's witness had *actually been promised* leniency and other extensive police aid in return for his testimony, and in the failure of the trial court to allow the defendant to interrogate the state's witness regarding charges pending against him at the time of his testimony.

In contradistinction, in the present case, the record reveals no promise whatsoever made by the prosecution to Grady, and, as we indicate, *infra,* the trial court did not restrict the cross-examination

We have only recently had occasion to point out that an unexpressed "intention" of the state not to prosecute a witness does not fall within the ambit of the *Brady* principles concerning disclosure by the prosecution of evidence "favorable to an accused." *State* v. *Ferrara,* 176 Conn. 508, 515, 408 A.2d 265 (1979). In the present case, the defendant's transparent attempt to shelter her claim beneath the constitutional penumbra of *Brady* and its progeny lacks even the surface appeal concerning that claim found in *Ferrara;* the prosecution's failure to reveal information regarding Grady's sentencing was not erroneous.

The defendant next argues that the delay in sentencing Grady before her trial was completed created an "inherently coercive" situation in which Grady was compelled under the circumstances to testify as a witness for the state, and, as a result, it is claimed that the defendant did not receive a fair trial.

We have previously considered a similar claim of an "inherently coercive" situation which is dispositive of the instant appeal. In *State* v. *Taylor,* 153 Conn. 72, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966), the state's chief witness was awaiting sentencing in another case in which he had entered a guilty plea two months prior to the immediate trial of two indicted defendants. The defendant in *State* v. *Taylor* argued that those circumstances created an inherently coercive situation. The defendant in that case, moreover, made a claim identical to that raised

of Grady by the defense in any way. In such circumstances, neither the principles in *Brady* and its progeny, nor the defendant's right to confront witnesses; see *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); was violated.

by the defendant Rucker: that the state's attorney's office illegally delayed imposition of sentence upon the chief state's witness, through control over the criminal calendar, until after the completion of the defendant's trial, and thereby "coerced" the witness into testifying for the state. We continue to reject this line of argument. Neither the state's attorney's office nor the defendant set the schedule for sentencing. *State* v. *Zeko,* 176 Conn. 421, 423, 407 A.2d 1022 (1979). It was the witness Grady's request, not the state's, that his sentencing be delayed until after Rucker's trial.[3] In response to this request, it was not improper for the court to delay sentencing. *Miller* v. *Aderhold,* 288 U.S. 206, 53 S. Ct. 325, 77 L. Ed. 702 (1933); *Miner* v. *United States,* 244 F. 422 (3d Cir. 1917); 21 Am. Jur. 2d, Criminal Law, § 526. It does not appear in the record that Grady was influenced or "coerced" by promises into testifying against the defendant. As we stated in *State* v. *Taylor,* supra, "[i]n any event, such circumstances would bear on the credibility of the witness rather than on his competency, and the trial court is of course the sole judge on such matters. The defendant has pointed to no rule of law which required exclusion of [Grady's] testimony or which can now be invoked to overturn a conviction which it helped to bring about. The competency of [Grady] to testify in this case is governed by the same considerations which allow an accomplice to testify against a criminal defendant. *State* v. *Wolcott,* 21 Conn. 272, 280. [See *State* v. *Ferrara,* 176 Conn. 508, 510, 408 A.2d 265 (1979).] . . . [Grady's] credibility and the

---

[3] The defendant, of course, has no standing to raise the issue of sentence delay for Grady. *State* v. *Taylor,* 153 Conn. 72, 79, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); cf. *United States* v. *Scheffer,* 463 F.2d 567 (5th Cir. 1972).

weight to be accorded his testimony were for the trier and were open to attack by cross-examination. *State* v. *Luzzi*, 147 Conn. 40, 46, 156 A.2d 505." *State* v. *Taylor*, supra, 80–81.

In the present case, the court charged the jury fully on the elements of the crime, the credibility of the witnesses, and particularly on the law pertaining to accomplices and convicted felons. No exceptions were taken by the defendant, and no claim pertaining to the charge appears in the defendant's brief. The court properly instructed the jury on the consideration to be given to the testimony of a witness implicated in a crime with another who turns state's evidence. We cannot say, in view of the above discussion, that the circumstances attending Grady's testimony were "inherently coercive," or that the defendant was denied, in this regard, a fair trial. *State* v. *Taylor*, supra, 81; *Lisenba* v. *California*, 314 U.S. 219, 227, 62 S. Ct. 280, 86 L. Ed. 166 (1941), rehearing denied, 315 U.S. 826, 62 S. Ct. 620, 86 L. Ed. 1222 (1942); cf. 21 Am. Jur. 2d, Criminal Law, §§ 146–147.

Finally, the defendant argues that the testimony of the state's witness, Arnold Grady, was so inconsistent and incredible that the verdict should be set aside as a matter of law. We do not agree. It is clear beyond cavil that it is for the trier of fact to determine the credibility of witnesses and what testimony they believe and what they consider is unworthy of credence. *State* v. *Chisolm*, 162 Conn. 631, 632, 295 A.2d 563 (1972); *State* v. *White*, 155 Conn. 122, 123, 230 A.2d 18 (1967). This applies to the defendant as well as to the convicted accomplice. See *State* v. *Hodge*, 153 Conn. 564, 573, 219 A.2d 367 (1966). Further, the court charged the jury on

the elements of the crime and the credibility of a convicted felon. No exceptions were taken and none was pursued in the defendant's brief. There was ample evidence that Grady's testimony was corroborated by other witnesses who testified that the conspiracy was proposed and repeatedly discussed by the defendant and Grady. We find no error in the refusal of the court to set aside the jury verdict.

There is no error.

In this opinion the other judges concurred.