MICHAEL WALKER *v.* COMMISSIONER OF CORRECTION
(AC 27072)

Schaller, DiPentima and West, Js.

---

Argued March 15—officially released September 4, 2007

*James B. Streeto*, assistant public defender, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Michael E. O'Hare*, supervisory assistant state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, J. The petitioner, Michael Walker, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) concluded that he failed to prove that the state, at his criminal trial, had suppressed exculpatory evidence in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), (2) excluded evidence at the habeas hearing that might have revealed a *Brady* violation, (3) found that one of the state's primary witnesses testified truthfully in all material respects at the criminal trial and (4) excluded certain police reports from evidence in the habeas hearing. We affirm the judgment of the habeas court.

The facts underlying the petitioner's conviction were recounted in the decision of our Supreme Court disposing of his direct appeal: "The record discloses that the [petitioner] and Tracey Fisher were arrested in connection with the death of Thomas Dixon and the wounding of Barrington Solomon. The shooting occurred on the

evening of May 12, 1987. Dixon and Solomon were seated, conversing on the first floor rear porch of a multiple family dwelling located at 104 Enfield Street in Hartford. The [petitioner] and Fisher approached the dwelling and fired bursts from a .30 caliber automatic or semi-automatic weapon at the men on the porch. The shots killed Dixon instantly and severely wounded Solomon. The shooting was apparently motivated by the [petitioner's] desire to avenge his brother, Robert Walker, who, on a previous occasion, had been shot by Solomon and, as a result, was paralyzed.

"At the [petitioner's] trial the state offered Lehman Brown as a witness. Brown testified that he knew the [petitioner] and Fisher, and that he had been with them early in the day on May 12, 1987. Thereafter, he said, he had gone to visit a friend, Dion Smith, at her apartment. Brown testified that Smith resided at 98-100 Enfield Street, the premises adjoining 104 Enfield Street, where Dixon and Solomon were shot. Brown stated that he had fallen asleep at 98-100 Enfield Street and that upon awakening in the evening he had gone out on a rear porch. While there, he observed the [petitioner] and Fisher come through the back lot behind 98-100 Enfield Street. Fisher was in possession of an automatic weapon. Brown stated that he then saw Fisher scale a fence between the properties and fire a series of shots at the men on the porch. Fisher then returned to where the [petitioner] was standing and handed him the gun. The [petitioner] then fired a burst from the weapon at the porch. Fisher and the [petitioner] then ran from the scene." *State* v. *Walker*, 214 Conn. 122, 124–25, 571 A.2d 686 (1990). Following Brown's direct testimony, the petitioner extensively cross-examined him regarding his motivation for testifying against the petitioner.

"Smith, Brown's friend, did not testify in the state's case-in-chief nor did she testify for the defense. After the [petitioner] had rested his case, however, the state

called her as a witness on rebuttal. Smith testified that she had known Brown for approximately two and one-half years. She stated that, although she had been with Brown on May 12, 1987, she had never been with him in or near an apartment at 98-100 Enfield Street in Hartford. Smith was not cross-examined by the [petitioner].

"During the state's closing argument to the jury the prosecuting attorney noted that he had called Smith as a witness because he had a duty to see that the [petitioner] received a fair trial and that he was obligated to produce all the relevant evidence whether it helped or hurt the state's case. He then stated that Smith's testimony indicated that the state's witness, Brown 'was probably not on the porch at 100 Enfield Street on the night in question.' " Id.

The petitioner received a total effective sentence of eighty years incarceration. Id., 123. His conviction was affirmed on direct appeal. Id., 124.

On January 16, 1996, Brown signed an affidavit recanting his trial testimony. The petitioner then instituted a habeas corpus proceeding on December 4, 1996,[1] claiming that Brown had committed perjury during the petitioner's trial, which the state either knew or should have known. The habeas court held hearings from September 27 through 29, 2004, and then again on October 15 and 26, 2004. During the hearings, on October 15, the habeas court allowed the petitioner to amend his petition to add an allegation that the state had failed to disclose material, exculpatory evidence in violation of *Brady* v. *Maryland*, supra, 373 U.S. 87.

---

[1] This was the petitioner's second petition for a writ of habeas corpus. He filed his first petition, on the basis of a claim of ineffective assistance of counsel, on March 17, 1994. The habeas court dismissed the petition, which was affirmed by this court, and the Supreme Court denied certification to appeal. See *Walker* v. *Commissioner of Correction*, 38 Conn. App. 99, 659 A.2d 195, cert. denied, 234 Conn. 920, 661 A.2d 100 (1995).

The habeas court issued a memorandum of decision, filed November 24, 2004, concluding that the state did not knowingly present perjured testimony and that there was no *Brady* violation. The court based those conclusions on its factual findings that Brown had testified truthfully in all material respects at the petitioner's criminal trial and that there never was any agreement between Brown and the state that should have been disclosed pursuant to *Brady*. Thus, the court declined to issue the petitioner a writ of habeas corpus. On October 17, 2005, the court granted the petitioner certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the petitioner first claims that he was denied due process of law and his right to a fair trial because the habeas court improperly concluded that he failed to prove that the state had suppressed exculpatory evidence in violation of *Brady* v. *Maryland*, supra, 373 U.S. 87. Specifically, the petitioner contends that the prosecutor failed to disclose to the defense that Brown, who was in police custody on charges related to a robbery, had his bond reduced to a written promise to appear in exchange for a written statement against the petitioner. The respondent, the commissioner of correction, responds that the court correctly concluded that the petitioner failed to prove the existence of such an agreement with Brown. We agree with the commissioner.

At the outset, we state the standards by which we review the petitioner's claims. The question of whether there existed an agreement between Brown and the state is a question of fact, which we review under the clearly erroneous standard. See *State* v. *Floyd*, 253 Conn. 700, 737, 756 A.2d 799 (2000). "When reviewing the decision of a habeas court, the facts found by the

habeas court may not be disturbed unless the findings were clearly erroneous. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Reid* v. *Commissioner of Correction*, 100 Conn. App. 59, 62–63, 917 A.2d 1001, cert. denied, 282 Conn. 907, 920 A.2d 309 (2007).

Whether the petitioner was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review. See *Quintana* v. *Commissioner of Correction*, 55 Conn. App. 426, 435–36, 739 A.2d 701, cert. denied, 252 Conn. 904, 743 A.2d 614 (1999). "The conclusions reached by the [habeas] court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wilson* v. *Office of Adult Probation*, 67 Conn. App. 142, 145, 786 A.2d 1120 (2001).

The following relevant testimony was elicited at the hearing on the petitioner's habeas petition. Brown recanted the testimony he had given in the petitioner's criminal trial. He also testified that once he had provided the police with a statement incriminating the petitioner, the charges against Brown "miraculously disappeared." Brown, however, did not refer to anything specific that was offered or said, instead claiming that "nothing was said in direct fashion, everything was indirect." Attorney Thomas R. Gerarde, who had represented Brown, testified that his goal would have been

to ensure that once Brown gave a statement, he did not return to jail and that he must have received consent to that, but he was just not sure how it happened. He further testified that he had a specific memory of not getting a promise from then state's attorney, James E. Thomas, for favorable treatment on the criminal charges against Brown. Gerarde also stated that his notes indicated, "no promises from JET," which he said referred to Thomas.[2] Detective Clyde Mitchell, the police officer who had interviewed Brown, also testified that the police had made no specific promises to Brown. Thomas testified that he could not recall whether he had entered into an agreement with Brown to recommend a written promise to appear in return for his cooperation.

"In [*Brady* v. *Maryland,* supra, 373 U.S. 83] . . . the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the [petitioner] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [petitioner], and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *Floyd* v. *Commissioner of Correction,* 99 Conn. App. 526, 533–34, 914 A.2d 1049, cert. denied, 282 Conn. 905, 920 A.2d 308 (2007).

Our Supreme Court has recognized that "[i]mpeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused." (Internal quotation marks omitted.) *State* v. *Monteeth,* 208 Conn. 202, 213, 544 A.2d 1199 (1988); see

---

[2] We note that the petitioner did not object to the admission of this hearsay. "Hearsay evidence admitted without objection, if believed by the [trier or fact], is a sufficient basis for a finding of fact." (Internal quotation marks omitted.) *State* v. *Outlaw,* 70 Conn. App. 160, 168, 797 A.2d 579 (2002).

also *Giglio* v. *United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *State* v. *Ortiz*, 280 Conn. 686, 717, 911 A.2d 1055 (2006). The purpose of requiring the state to disclose impeachment evidence to a criminal defendant is "to ensure that the jury knows the facts that might motivate a witness in giving testimony . . . ." (Internal quotation marks omitted.) *State* v. *Paradise*, 213 Conn. 388, 400, 567 A.2d 1221 (1990), overruled in part on other grounds by *State* v. *Skakel*, 276 Conn. 633, 693, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

A petitioner bears the burden of proving the existence of an agreement between the state or police and a state's witness. See *State* v. *Floyd*, supra, 253 Conn. 737. Any such understanding or agreement between any state's witness and the state police or state's attorney clearly falls within the ambit of the *Brady* principles. See *State* v. *Rucker*, 177 Conn. 370, 373, 418 A.2d 55 (1979). An unexpressed intention by the state not to prosecute a witness does not. Id., 376. In *State* v. *Floyd*, supra, 738–39, our Supreme Court held that a connection between a witness' willingness to testify and the state's willingness not to oppose a reduction of the witness' bond to a promise to appear did not necessarily constitute an implied agreement for *Brady* purposes, especially when there was other evidence militating against the existence of such an implied agreement.

In this case, we conclude that the habeas court found, on the basis of the evidence presented, that there was no agreement between the state and Brown within the penumbra of *Brady*. In his testimony, Brown did not mention anything that was directly said or offered to him. Neither Gerarde nor Thomas could recall whether an agreement had been made with respect to Brown's release on a promise to appear. Mitchell stated that no promises had been made to Brown. Although Gerarde and Brown may have hoped or expected to receive

something in exchange for Brown's cooperation, such an expectation does not trigger a *Brady* obligation on the part of the state. See id., 740; *State* v. *Rucker*, supra, 177 Conn. 374–75.

The petitioner additionally refers to the fact that the charges against Brown were ultimately dropped, arguing that the only reasonable inference is that there was a connection between the dismissal of the case and Brown's testimony against the petitioner. Our Supreme Court has made clear, however, that not every possible connection between a witness' willingness to testify and the state's recommendation with respect to that witness constitutes an agreement within the penumbra of *Brady*. *State* v. *Floyd*, supra, 253 Conn. 739. Furthermore, such an inference, in this case, is belied by Gerarde's testimony, credited by the habeas court, that Thomas did not make any promises with respect to the charges against Brown and by the notation to that effect in Gerarde's case notes.

Because we conclude, after a careful review of the record, that the habeas court reasonably found that there was no agreement between Brown and the state, the petitioner's *Brady* claim fails.

## II

The petitioner next claims that the habeas court's evidentiary rulings deprived him of a fair habeas hearing. Specifically, the petitioner argues that because he was denied access to the file of the state's attorney on Brown's robbery case, he was deprived of the necessary evidence by which he could have proven the *Brady* violation. We disagree.

We review the habeas court's evidentiary rulings under the abuse of discretion standard. See *Player* v. *Commissioner of Correction*, 73 Conn. App. 556, 560,

808 A.2d 1140, cert. denied, 262 Conn. 926, 814 A.2d 378 (2002).

At the habeas trial, the petitioner's counsel attempted to question Thomas regarding the disposition of the charges against Brown.[3] Thomas stated that he was not at liberty to discuss that information. The petitioner's counsel then requested that the court issue an order to allow Thomas to discuss the erased records for Brown. The court denied that motion. The petitioner's counsel subsequently asked the court to reconsider its ruling, which the court refused to do because it found that the evidence was not material.[4] After the petitioner had amended his petition to include a *Brady* count, his counsel sought to review Thomas' case file on Brown in order to determine whether it contained any document that would indicate an agreement between the state and Brown. The court ordered the state to remove any matter that would not have been available to defense counsel at the time of the original trial and to turn the remainder of the file over to the petitioner. The state removed several documents it claimed to be privileged either as work product or as postconviction matters and gave the petitioner the remainder of the file. Thomas testified that after examining the entire file, he did not find anything indicating an agreement. The petitioner's counsel asked the court to conduct an in camera review of the privileged documents, but the court denied the request on the ground that the petitioner had not made a sufficient showing of entitlement.

## A

The petitioner is essentially challenging two different evidentiary rulings made by the court. The petitioner's

[3] The petitioner subpoenaed Brown's court records as well, but a judicial branch employee in charge of the scheduling of court reporters, testified that they had been physically destroyed in 1992, in accordance with statute. See General Statutes § 51-36.

[4] At this stage in the habeas proceeding, the petitioner had not yet amended his petition to include the *Brady* count.

first challenge relates to the court's ruling preventing the petitioner from asking Thomas about the disposition of the charges against Brown. We decline to review this ruling because, as the commissioner correctly argues, it has not been preserved for appeal.

"We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." *Keating* v. *Glass Container Corp.*, 197 Conn. 428, 431, 497 A.2d 763 (1985). "Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 540, 864 A.2d 847 (2005).

The court ruled that such evidence was not material to the issue before it because at that time, the petitioner had not yet alleged a *Brady* claim. The petitioner never renewed his attempt to ask Thomas about the disposition of Brown's case after he had amended his petition to include a *Brady* claim. Because the court never had the opportunity to rule on the potential evidence in light of the *Brady* claim, we decline to review it on those new grounds.

B

With respect to the court's second evidentiary ruling, the petitioner contends that the court improperly denied him access to the file of the state's attorney on Brown. We disagree.

A criminal defendant does not have the right to conduct a general fishing expedition into privileged or sensitive records. *State* v. *Brown*, 273 Conn. 330, 346, 869 A.2d 1224 (2005). It is well settled that "[a] defendant's

right to discover exculpatory evidence does not include the unsupervised authority to search through the [state's] files. . . . Settled practice is to the contrary. In the typical case [in which] a defendant makes only a general request for exculpatory material under *Brady* . . . it is the [s]tate that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." (Citations omitted.) *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 59, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987).

In *State* v. *Colon*, 272 Conn. 106, 261–66, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005), the defendant served the office of the chief state's attorney with a subpoena duces tecum, seeking documents related to an investigation into alleged corruption of certain Waterbury police officers who were listed as potential state's witnesses for the defendant's trial. The state moved to quash the subpoena with respect to the files on the ground that they were subject to a qualified law enforcement privilege, and the trial court granted the motion. Id., 261–63. On appeal, the defendant claimed that the trial court improperly refused to conduct an in camera inspection of the privileged material. Our Supreme Court affirmed the trial court's order, explaining that because the materials that defense counsel sought were privileged and were sought for purposes of impeachment, defense counsel was required to establish a threshold showing of entitlement to an in camera review of purportedly privileged records. Id., 263–64. In that case, the defendant's only basis for seeking the privileged materials was certain allegations of corruption made in a published anonymous letter to the editor of a Waterbury newspaper. Our Supreme Court held that this was insufficient to overcome the privilege claimed. Id., 265–66.

In this case, the state turned over most of the file for the petitioner to review, and he failed to find evidence of an agreement. Additionally, Thomas testified that there was nothing in the privileged documents that would lead anyone to believe that such an agreement existed. The petitioner has not provided us with a basis for concluding that there would be evidence of an agreement in the privileged documents, and, in fact, all of the evidence suggests the contrary. Accordingly, we conclude, as did the court in *Colon*, that the court did not abuse its discretion in ruling that the petitioner had not made a sufficient showing of entitlement to warrant in camera review of the privileged documents in Brown's file.

### III

The petitioner's third claim is that the habeas court improperly concluded that his due process rights were not violated by the state's presentation of Brown's perjured testimony. Specifically, the petitioner argues that the court's determination that Brown's testimony at the habeas trial was unworthy of belief and that his testimony at the petitioner's criminal trial was true in all material respects is clearly erroneous. The petitioner's claim is unavailing.

The question of whether a witness perjured himself is a factual finding, which we review under the clearly erroneous standard. See *Ortega* v. *Duncan*, 333 F.3d 102, 107–108 (2d Cir. 2003). When the factual basis of the court's decision is attacked, "[w]e are called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Our function is not to examine the record to see if the trier of fact could have reached a contrary conclusion."

(Internal quotation marks omitted.) *Morales* v. *Commissioner of Correction*, 99 Conn. App. 506, 509, 914 A.2d 602, cert. denied, 282 Conn. 906, 920 A.2d 308 (2007). The United States Court of Appeals for the Second Circuit has made clear that in order to determine whether perjury occurred, "the court must weigh all the evidence of perjury before it, including but not limited to the recantation . . . ." *Ortega* v. *Duncan*, supra, 107. Thus, the court must go beyond the recantation to review other independent evidence bearing on whether there was perjury at trial.

We conclude that the court's findings with respect to the credibility of Brown's trial testimony and his recantation find ample support in the record and are therefore not clearly erroneous.[5] The court based those findings on the detailed nature of the statement that Brown had given the police, the consistency between that statement and his trial testimony, and the fact that Brown's testimony was corroborated by other witnesses at the trial. The court also noted Brown's potential motives to lie at this stage, including the fact that his testimony at the trial of his cousin, Fisher, had caused a rift in the family and that Brown was incarcerated at the department of correction and subject to direct pressure that could be brought to bear on him by the petitioner. Finally, the court found it significant that Brown did not come forward with his recantation until approximately eight years after his original trial testimony, which was long after the statute of limitations for a perjury prosecution had passed.

The petitioner directs us to evidence favorable to his claim and urges us to conclude, on the basis of this evidence, that the habeas court's finding was clearly

[5] We need not consider the petitioner's assertion that Brown lied about having an agreement with the state because we have affirmed the court's factual finding that no such agreement existed.

erroneous. That we cannot do. First, the habeas court acted well within its discretion in finding that Brown's trial testimony was generally truthful despite some discrepancies. See *State* v. *Hoyeson,* 154 Conn. 302, 305, 224 A.2d 735 (1966) ("a trier [of facts] is entitled to credit some portions of a witness' testimony and discredit other portions"). Furthermore, the fact that there is support in the record for a different conclusion is irrelevant at this stage in the judicial process. As we have noted, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. We review the totality of the evidence, including reasonable inferences therefrom, to determine whether it could support the trier's decision. See *Morales* v. *Commissioner of Correction,* supra, 99 Conn. App. 509. We conclude that it does.

IV

The petitioner's final claim is that the habeas court improperly declined to admit into evidence police reports related to the crime and its investigation, which, according to the petitioner, would have discredited the trial testimony of Brown and those who corroborated his testimony. We disagree.

The petitioner offered the police reports to undercut various aspects of the corroboration of Brown's testimony, including that (1) someone other than the petitioner may have had a motive and weapon with which to commit the crime, (2) shell casings had been recovered from an additional location, which Brown had not referenced as a point from which the petitioner or Fisher fired a weapon, and (3) some witnesses told the police that the shooting had been perpetrated by one gunman and not two. The habeas court excluded the reports primarily on the grounds of hearsay and relevance, ruling that the proffered evidence was too collateral to the issue of whether Brown had committed perjury.

"Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 219, 881 A.2d 160 (2005). In general, evidence is relevant if it has a tendency to establish the existence of a material fact. *State* v. *Hurdle*, 85 Conn. App. 128, 137, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004). "The determination of whether a matter is relevant or collateral . . . generally rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Reyes*, 81 Conn. App. 612, 619, 841 A.2d 237 (2004).

The habeas court was charged with determining whether Brown had perjured himself at the petitioner's trial, not with retrying the entire case against the petitioner. None of the evidence proffered by the petitioner was directly relevant to the discrete issue before the habeas court. That someone else had a motive and means to commit the crime, even if true, does not negate that the petitioner also had a motive. Similarly, that shell casings were found in an additional location does not detract from the fact that shell casings were found in the two locations that Brown had pinpointed as the places from which the petitioner and Fisher had fired their weapon. Finally, that certain witnesses believed that there was only one shooter cannot, at this stage in the proceedings, trump the testimony of other witnesses who claimed there were two. Thus, none of the proffered evidence had a tendency to establish that

Brown had perjured himself at the petitioner's trial, and we conclude that the habeas court did not abuse its discretion in ruling that it should be excluded on the ground of relevance.[6]

For all the foregoing reasons, we conclude that the habeas court properly refused to issue a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Because we conclude that the court acted within its discretion when it excluded the evidence on the ground of relevance, we need not consider whether it properly concluded that the same evidence was excludable on the additional ground of hearsay.