******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MIGUEL VEGA *v.* COMMISSIONER OF CORRECTION
## (AC 46077)

Moll, Clark and Eveleigh, Js.

*Syllabus*

The petitioner, who had been convicted, after a jury trial, of various crimes in connection with a home invasion and the shooting of two victims, sought a writ of habeas corpus, claiming that the state had suppressed exculpatory information in violation of *Brady* v. *Maryland* (373 U.S. 83) and that his trial counsel, K, had rendered ineffective assistance by failing to consult with or retain an expert on eyewitness identification and by failing to impeach P, one of the eyewitnesses who testified for the state. After an altercation with the two victims at a bar hours earlier, the petitioner and another man entered an apartment where a group of individuals had gathered, including the two victims, several of whom had known the petitioner for years. Both men were armed and had their heads and faces covered. When the petitioner reached the living room, he pulled down his mask and fired toward the window. He then fired two shots at the first victim, striking him. The two men chased the second victim out of the apartment, firing and striking him. At the apartment, P called 911 and stated that the first victim had been shot. After being transported to a hospital, the first victim died, and the second victim survived. After the police arrived on the scene, several people who were present during the shooting identified the petitioner as one of the shooters. At the petitioner's criminal trial in 2016, several witnesses testified that the petitioner was the shooter, and at least two witnesses testified that they had heard an eyewitness scream the petitioner's name during the shooting. A recording of P's 911 call, in which she identified the petitioner as the individual who had shot the first victim, was admitted at the petitioner's criminal trial. The spontaneous excited utterances identifying the petitioner as the shooter made by both an eyewitness when she phoned her mother shortly after the shooting and by the second victim, when he spoke to a police officer as he was being treated for his gunshot wounds in the hospital, were also admitted at the petitioner's criminal trial. Two years after the petitioner was convicted, in an appeal in an unrelated habeas case brought by T, this court held that the state's failure to correct the false testimony of P in T's 2009 criminal trial violated T's due process rights. At the habeas trial in the present case, K testified that he had requested that the state disclose all exculpatory material but did not recall whether the state had disclosed any exculpatory material related to P, and the prosecutor in the petitioner's criminal trial, R, testified that he believed that he had turned over all exculpatory material that was in his possession to the defense. The

petitioner presented the testimony of B, a professor of psychology specializing in memory and psychology in the legal system. In his testimony, B detailed factors that can reduce identification accuracy or impact memory and testified that he would have been able to assist the petitioner's trial counsel in connection with cross-examination and arguments and in pursuit of a motion to suppress. On cross-examination, B testified that an eyewitness' familiarity with a suspect would make an identification more reliable. The habeas court rendered judgment denying the petition for a writ of habeas corpus. Thereafter, the habeas court denied the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for certification to appeal, the petitioner having failed to demonstrate that his claims involved issues that were debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised were adequate to deserve encouragement to proceed further.

2. The petitioner could not prevail on his claim that the habeas court improperly determined that he was not deprived of his rights to due process and to a fair trial in violation of *Brady* because the state failed to disclose that P had testified falsely in T's criminal trial: pursuant to *State* v. *Guerrera* (331 Conn. 628), R was not required to search the file in T's unrelated criminal case to exclude the possibility that the file contained exculpatory information; moreover, there was no evidence presented and no findings made by the habeas court that R had actual knowledge or cause to know of the existence of *Brady* material in T's file, R's lack of memory as to whether he had exculpatory information regarding P did not, without more, equate to affirmative proof of any fact, and there was no evidence at the habeas trial and the habeas court made no factual finding that K had made a specific request for that information, which was required in order to trigger the state's examination of that file under the circumstances of this case.

3. The petitioner could not prevail on his claim that the habeas court improperly concluded that he had failed to establish that K rendered ineffective assistance during his criminal trial:

a. Contrary to the petitioner's argument, the habeas court properly concluded that K did not render ineffective assistance by failing to consult with or call an expert on eyewitness identification to testify at the petitioner's criminal trial: K offered a legitimate strategic reason for his decision not to consult an expert on eyewitness identification in which he recognized that the primary concern with eyewitness identifications was not present because the eyewitnesses knew the petitioner prior to the shooting; moreover, the petitioner failed to demonstrate that there was a reasonable probability that the result of his criminal trial would have been different if K had consulted such an expert, as the witnesses knew the petitioner and were therefore likely to identify him accurately,

B testified on cross-examination that familiarity makes an eyewitness identification more reliable, the petitioner admitted that K had attempted to impeach all of the eyewitnesses by testing their credibility and the consistency of their accounts, and the petitioner offered no evidence to undermine the fact that the witnesses who identified the petitioner at his criminal trial knew him for a long time before the shooting occurred.
b. The petitioner could not prevail on his alternative claim that, if the state had disclosed P's prior false testimony, then K rendered ineffective assistance by failing to impeach her concerning that false testimony; the evidence adduced at the habeas trial did not establish that the state failed to disclose P's false testimony in T's criminal case to the defense, and the petitioner failed to call P to testify at the habeas trial to offer the additional information he claims should have been elicited by more thorough cross-examination or to show how alternative cross-examination questions would have impacted her credibility.

Argued February 8—officially released April 9, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition; thereafter, the court, *Newson, J.*, denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Paul J. Narducci*, state's attorney, and *Donna Fusco*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

EVELEIGH, J. The petitioner, Miguel Vega, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal, (2)

improperly concluded that he failed to prove that the state had suppressed exculpatory information in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and (3) improperly concluded that he failed to establish that his trial counsel rendered ineffective assistance. Because the petitioner has failed to demonstrate that the court improperly denied his petition for certification to appeal, we dismiss the appeal.

The facts underlying the petitioner's conviction were recounted in the decision of this court on direct appeal in *State* v. *Vega*, 181 Conn. App. 456, 187 A.3d 424, cert. denied, 330 Conn. 928, 194 A.3d 777 (2018), and can be summarized for our purposes as follows. On the night of March 2, 2010, Michael Ellis, Jr. (Ellis), Altareika Parrish, Rahmel Perry, Shariymah James, Alice Phillips, Keyireh Kirkwood, and others gathered in a New London apartment. Id., 459. In the early morning of March 3, 2010, some individuals from the group went to a bar where the petitioner and a few of his associates were also present. Id. The petitioner motioned to Ellis to step away from Kirkwood, with whom the petitioner had a child. Id., 459–60. When Ellis did not do so, the petitioner approached Ellis and punched him in the face. Id., 460. A fight then broke out in the bar between the two groups, during which Perry began punching and kicking the petitioner, who was on the losing end of the fight. Id. Outside of the bar, another altercation ensued between the two groups, which was quickly broken up. Id.

After both groups left the bar, Ellis, Perry, Parrish, Kirkwood, Phillips, and James returned to the New London apartment at approximately 1:30 a.m. Id. Shauntay Ellis was also present in the apartment when the group returned. Id. At approximately 2 a.m., the petitioner and another man entered the apartment. Id. Both men were armed, were dressed in all black clothing, and

had their heads and faces covered. Id. The petitioner proceeded directly to the living room where Ellis and Perry were located. Id. He pulled down his mask and ordered everyone in the room to get on the floor. Id. The petitioner then fired toward the window, in Ellis' direction, but did not hit Ellis. Id. He then fired two shots at Perry, who was on the couch, striking him. Id. Meanwhile, Ellis ran out of the living room and toward the back door where the men had entered. Id. The intruders left the apartment and chased Ellis, firing approximately four shots and striking Ellis twice. Id., 461. At the apartment, Phillips called 911 and stated that Perry had been shot. Id. After being transported to the hospital, Perry succumbed to his injuries and Ellis survived. Id. After the police arrived on the scene, several people who were present during the shooting identified the petitioner as one of the shooters. Id.

In connection with these events, the petitioner was charged and convicted, following a jury trial in 2016,[1] of murder in violation of General Statutes § 53a-54a (a), felony murder in violation of General Statutes § 53a-54c, home invasion in violation of General Statutes § 53a-100aa (a) (2), burglary in the first degree in violation of General Statutes § 53a-101 (a) (3), attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (5), and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). Id., 462–63. He was sentenced to a total effective term of seventy-five years of imprisonment. Id., 463. His conviction was affirmed on direct appeal. Id., 492.

In 2018, the petitioner filed a petition for a writ of habeas corpus, which he later amended. He alleged in

---

[1] A trial occurred in 2015 that ended in a hung jury and the trial court declared a mistrial. See *State* v. *Vega,* supra, 181 Conn. App. 462.

his amended petition, among other things, that his rights to due process and a fair trial were violated by the state's alleged failure to disclose material exculpatory evidence and that his trial counsel rendered ineffective assistance at his criminal trial. The court denied his petition. Thereafter, the petitioner filed a petition for certification to appeal. After the court denied the petition for certification to appeal, this appeal followed. Additional facts will be set forth as necessary in the context of the petitioner's claims.

I

The petitioner first claims that the court abused its discretion by denying his petition for certification to appeal. We disagree.

We first set forth certain legal principles that guide us in our review. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous.

In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Howard* v. *Commissioner of Correction*, 217 Conn. App. 119, 124–25, 287 A.3d 602 (2022). As we discuss more fully in parts II and III of this opinion, because the resolution of the petitioner's underlying claims involve issues that are not debatable among jurists of reason, could not have been resolved by a court in a different manner, and are not adequate to deserve encouragement to proceed further, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal from the denial of the petition for a writ of habeas corpus.

II

The petitioner claims that the court improperly determined that he was not deprived of his rights to due process and to a fair trial in violation of *Brady* v. *Maryland*, supra, 373 U.S. 83. Specifically, he contends that the state failed to disclose that Phillips, who testified for the state in the petitioner's criminal trial, had testified falsely in the prior unrelated 2009 trial of Kurtis Turner. He does not claim that Phillips testified falsely in his criminal trial but argues that "it is clear that the state was on notice that exculpatory impeachment evidence existed in 2009. It is clear from the record that it was not disclosed to the defense. As a result, the habeas court erred in finding that the state did not suppress evidence by failing to tell the defense about Phillips' 2009 false testimony." We disagree.

"The fourteenth amendment to the United States constitution demands that [n]o [s]tate shall . . . deprive any person of life, liberty, or property, without due

process of law . . . . Due process principles require the prosecution to disclose to the defense evidence that is favorable to the defendant and material to his guilt or punishment. . . . In order to obtain a new trial for improper suppression of evidence, the petitioner must establish three essential components: (1) that the evidence was favorable to the accused; (2) that the evidence was suppressed by the state—either inadvertently or wilfully; and (3) that the evidence was material to the case, i.e., that the accused was prejudiced by the lack of disclosure." (Citations omitted; internal quotation marks omitted.) *Marquez* v. *Commissioner of Correction*, 330 Conn. 575, 591–92, 198 A.3d 562 (2019). "Whether the petitioner was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." *Walker* v. *Commissioner of Correction*, 103 Conn. App. 485, 491, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007).

In *Turner* v. *Commissioner of Correction*, 181 Conn. App. 743, 187 A.3d 1163 (2018), this court held that the state's failure to correct the false testimony of Phillips that she did not expect any consideration for her testimony in the 2009 criminal trial of Kurtis Turner violated Turner's due process rights to a fair trial under *Brady*. See id., 747, 753–58. At the habeas trial in the present case, Attorney Michael Regan, who was the prosecutor in the petitioner's criminal trial, testified that he had an open file policy that meant that "whatever I had, [the] defense had" and that it was his belief that he had turned over all exculpatory material that was in his possession. Attorney Robert Kappes, who was assigned to represent the petitioner, testified that he had requested that the state disclose all exculpatory material but did not recall whether the state had disclosed any exculpatory material related to Phillips.

In rejecting the petitioner's *Brady* claim, the habeas court reasoned that the petitioner's argument that the

state was on notice of Phillips' false testimony in the Turner case was unavailing because that false testimony "was in a wholly unrelated proceeding." We agree that the knowledge that Phillips had previously testified falsely in the unrelated Turner case cannot be imputed onto the prosecutor in the petitioner's criminal trial.

In *State* v. *Guerrera*, 331 Conn. 628, 206 A.3d 160 (2019), our Supreme Court noted the well established law that "[t]he state has a duty under *Brady* to disclose to the accused evidence that is both favorable to the defense and material to the case. . . . As the state's representative, the prosecutor has a broad obligation to disclose *Brady* material because principles of fundamental fairness demand no less. . . . This obligation extends to evidence favorable to the defense that is not in the possession of the individual prosecutor responsible for trying the case; indeed, the obligation may encompass such evidence even if it is not known to the prosecutor. . . . More specifically, the prosecutor's duty of disclosure extends to *Brady* material that is known to the others acting on the government's behalf in [the] case, including, but not limited to, the police." (Citations omitted; internal quotation marks omitted.) Id., 646–47.

Our Supreme Court in *Guerrera* rejected the defendant's claim that the state's attorney had a duty to review for exculpatory *Brady* material 1552 telephone calls made by his codefendants that were recorded but not reviewed by the Department of Correction (department). Id., 646–56. The court concluded that "the 1552 calls that were not reviewed by the department, cannot reasonably be characterized as part of the state's investigatory file. Consequently, the defendant's claim that he was entitled to a review of those calls because they were part of the file must fail." Id., 655–56. Our Supreme Court adopted the reasoning set forth in *United States* v. *Joseph*, 996 F.2d 36, 41 (3d Cir.), cert. denied, 510

U.S. 937, 114 S. Ct. 357, 126 L. Ed. 2d 321 (1993), that *Brady* does not "require prosecutors to search their unrelated files to exclude the possibility, however remote, that they contain exculpatory information. . . . [When] a prosecutor has no actual knowledge or cause to know of the existence of *Brady* material in a file unrelated to the case under prosecution, a defendant, in order to trigger an examination of such unrelated files, must make a specific request for that information—specific in the sense that it explicitly identifies the desired material and is objectively limited in scope." (Internal quotation marks omitted.) *State* v. *Guerrera,* supra, 331 Conn. 653.

In the present case, the petitioner's argument that "the state *knew* in 2009 that [Phillips] provided false testimony" in the Turner trial and therefore was obligated to turn that information over to the defense is premised on a misapprehension of the law. (Emphasis in original.) According to *Guerrera,* Regan was not required to search the unrelated file in the Turner case to exclude the possibility that that file contained exculpatory information. See *State* v. *Guerrera,* supra, 331 Conn. 653. No evidence was adduced at the habeas trial that Regan had actual knowledge of the existence of *Brady* material in the Turner file. Rather, Regan testified that, "if I had exculpatory information on [Phillips], I would have disclosed it, but I don't recall the specifics if I had any." The court found that Regan "had little specific memory of any specific discovery provided to the defense in this matter" and concluded that "[a] lack of memory does not, without more, equate to affirmative proof of any fact." Because there was no evidence presented and no findings made by the habeas court that Regan had actual knowledge or cause to know of the existence of *Brady* material in the unrelated Turner file, the defense was required to have made a specific request for that information in order to trigger the

state's examination of the unrelated Turner file. See *State* v. *Guerrera*, supra, 331 Conn. 653. There was no evidence at the habeas trial and the habeas court made no factual finding that Kappes had made such a request. Accordingly, because Regan was not required to review the Turner file for *Brady* information, the petitioner's *Brady* claim is without merit.[2] In light of the foregoing, we conclude that the petitioner has not demonstrated that the habeas court abused its discretion in denying certification to appeal with respect to this claim.

## III

The petitioner next claims that the habeas court improperly concluded that he failed to establish that Kappes rendered ineffective assistance by failing to (a) consult with and/or call an expert on eyewitness identification at the petitioner's criminal trial and (b) impeach Phillips concerning her false testimony in the unrelated Turner case. We disagree.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674

---

[2] Additionally, the court alternatively found that, even if it were assumed that the state was required to disclose Phillips' false testimony, the evidence presented at the habeas trial did not establish that the state had failed to disclose it. This finding further supports our conclusion that the court did not abuse its discretion in denying certification to appeal with respect to this claim.

(1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may [deny] a petitioner's claim if he fails to meet either prong." (Citation omitted; internal quotation marks omitted.) *Godfrey-Hill* v. *Commissioner of Correction*, 221 Conn. App. 526, 535, 302 A.3d 923, cert. denied, 348 Conn. 929, 304 A.3d 861 (2023).

A

The petitioner argues that the court improperly concluded that Kappes did not render ineffective assistance for failing to consult with and/or call an expert on eyewitness identification. We disagree.

As noted by the habeas court, the petitioner was identified as the shooter at the petitioner's criminal trial by Shauntay Ellis; Parrish, who had known the petitioner since middle school; James, whose best friend had a child with the petitioner; and Ellis.[3] Also admitted at the petitioner's criminal trial was a recording of Phillips' 911 telephone call in which she identified the petitioner as the one who had shot Perry. See *State* v. *Vega*, supra, 181 Conn. App. 491. Additionally, at least two witnesses testified at the petitioner's criminal trial that they had heard Kirkwood scream the petitioner's name during the shooting. Id. Also admitted

---

[3] Because Ellis refused to testify at the petitioner's second trial, his prior identification testimony from the petitioner's first trial was allowed to be read into the record.

at the petitioner's criminal trial were the spontaneous excited utterances identifying the petitioner as the shooter made by Kirkwood, when she telephoned her mother shortly after the shooting, and by Ellis, when he spoke to a police officer as he was being treated for his gunshot wounds in the hospital. Id., 464–78.

At the habeas trial, the petitioner presented the testimony of Garrett Berman, a professor of psychology at Roger Williams University specializing in applied psychology, memory, and psychology in the legal system. In his testimony, Berman detailed factors that can reduce identification accuracy or impact memory, including lighting, stress, disguise, weapons focus, the length of time a witness is exposed to a particular event, alcohol use, and contamination, including witnesses talking to each other after an event. He testified that he would have been able to assist the petitioner's trial counsel in numerous ways in connection with cross-examination and arguments and in pursuit of a motion to suppress. On cross-examination, he testified that an eyewitness' familiarity with a suspect would make an identification more reliable.

The court determined that the petitioner failed to prove ineffective assistance of counsel. The court reasoned that the petitioner failed to connect Berman's testimony or expertise "with any affirmative evidence as to how counsel's consultation with such an expert would actually have impacted the identification of the petitioner in this particular case. None of the identification witnesses from the criminal proceedings were called to testify at the habeas trial. The petitioner offered possibility and theory through his expert, but nothing in the way of actual evidence to undermine the fact that the witnesses who identified the petitioner at trial were personally familiar with him long before the shooting in question.

The petitioner also failed to present any evidence disputing the procedures used to identify him in connection with his arrest or during the trial. Given the above, the petitioner has failed to meet his burden to prove, under the circumstances of this particular case, that it was professionally unreasonable for [Kappes] not to have consulted with an expert in eyewitness identification or that use of such an expert would have had any reasonable likelihood of a different result.”

The court properly determined that Kappes did not render constitutionally deficient performance. Kappes testified at the habeas trial that the eyewitnesses knew the petitioner prior to the incident and that, just before the shooting, the petitioner pulled his mask down, revealing his entire face. Kappes stated that he did not consult with or present the testimony of an eyewitness identification expert because “raising that type of claim would tarnish my credibility with the jury by trying to convince them that multiple people who knew [the petitioner] for such a long time couldn’t recognize him when he pulled his mask down.”

“[T]here is no per se rule that requires a trial attorney to call an expert in a criminal case. . . . [F]ailing to retain or utilize an expert witness is not deficient when part of a legitimate and reasonable defense strategy. . . . Our appellate courts repeatedly have rejected a petitioner’s claim that his trial counsel rendered deficient performance by failing to call an expert witness at trial on the ground that trial counsel’s decision was supported by a legitimate strategic reason.” (Citations omitted; internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, 222 Conn. App. 278, 294–95, 304 A.3d 862 (2023), cert. denied, 348 Conn. 940, 307 A.3d 275 (2024).

Kappes offered a legitimate strategic reason for his decision in which he recognized that the primary concern with eyewitness identifications was not present

because the eyewitnesses knew the petitioner prior to the shooting. "The primary concern expressed in cases discussing the problems with eyewitness identification relates to a witness observing and subsequently identifying a stranger. . . . Witnesses are very likely to recognize under any circumstance the people in their lives with whom they are most familiar, and any prior acquaintance with another person substantially increases the likelihood of an accurate identification." (Internal quotation marks omitted.) *State* v. *Guilbert*, 306 Conn. 218, 260 n.39, 49 A.3d 705 (2012).

The court also properly determined that the petitioner had not proven that there was a reasonable probability that, had Kappes called Berman to testify at the petitioner's criminal trial, the result of the trial likely would have been different. The witnesses knew the petitioner and therefore were likely to identify him accurately. See id. Berman testified on cross-examination that familiarity makes an eyewitness identification more reliable. Additionally, as stated by the petitioner in his appellate brief, Kappes "did try to impeach all of [the eyewitnesses], testing their credibility and the consistency of their accounts." Furthermore, as reasoned by the habeas court, the petitioner offered no evidence to undermine the fact that the witnesses who identified the petitioner at his criminal trial knew him for a long time before the shooting occurred. For the foregoing reasons, we conclude that the court properly determined that the petitioner failed to establish that Kappes rendered ineffective assistance at trial by declining to consult with and/or call an expert on eyewitness identification, and, therefore, the court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

B

The petitioner argues, in the alternative, that if the state had disclosed Phillips' prior false testimony, then

Kappes rendered ineffective assistance for failing to impeach her concerning that false testimony. We disagree.

The habeas court found, in the alternative, that the evidence adduced at the habeas trial did not establish that the state failed to disclose Phillips' false testimony in the Turner case to the defense.[4] The court concluded that the petitioner's claim that Kappes rendered ineffective assistance due to his failure to cross-examine Phillips adequately regarding her false testimony in the Turner case failed for lack of evidence. The court reasoned that the petitioner failed to call Phillips to testify at the habeas trial "to offer the additional information he claims should have been elicited by more thorough cross-examination or to show how alternative cross-examination questions would have impacted [her] credibility."

We conclude that the habeas court properly concluded that the petitioner could not prevail on his claim due to a lack of evidence. "It is axiomatic that a habeas petitioner who claims prejudice based on counsel's alleged failure to present helpful evidence from a particular witness, must call that witness to testify before the habeas court or otherwise prove what the witness would or could have stated had he been questioned at trial, as the petitioner claims he should have been. See, e.g., *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 554, 124 A.3d 1 (petitioner failed to prove prejudice when he 'did not offer evidence regarding how [the witnesses] would have testified if they had been cross-examined [differently]'), cert. denied, 320 Conn. 910, 128 A.3d 954 (2015)." *Benitez* v. *Commissioner of Correction*, 197 Conn. App. 344, 351, 231 A.3d

---

[4] In so concluding, the court noted that Kappes testified at the habeas trial that he did not remember whether he had received any specific exculpatory information related to Phillips from the state and Regan had little memory of any specific discovery provided to the defense in this matter.

1285, cert. denied, 335 Conn. 924, 233 A.3d 1091 (2020). Accordingly, we conclude that the habeas court properly determined that the petitioner failed to establish ineffective assistance of counsel, and, therefore, the court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

For the foregoing reasons, we determine with respect to the substantive claims raised by the petitioner in the present appeal that he failed to demonstrate that those issues are debatable among jurists of reason, could be resolved by a court in a different manner, or deserve encouragement to proceed further. Accordingly, we conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal as to the substantive claims raised in the present appeal.

The appeal is dismissed.

In this opinion the other judges concurred.