SCOTT LEWIS *v.* COMMISSIONER OF CORRECTION
(AC 29760)

Flynn, C. J., and Lavine and Borden, Js.

Argued February 10—officially released August 11, 2009

*Scott Lewis*, pro se, the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *Christopher T. Godialis*, supervisory assistant state's attorney, for the appellee (respondent).

LAVINE, J. The petitioner, Scott Lewis, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the court improperly concluded that (1) he failed to prove that the state suppressed evidence of an agreement with a witness, (2) his claim that his conviction was the product of perjured testimony was not an independent or freestanding claim on which relief could be granted in a habeas proceeding and (3) newly discovered evidence did not establish his actual innocence of the crimes of which he was convicted.[1] We dismiss the appeal.

In 1995, following a jury trial, the petitioner was found guilty and convicted of two counts of murder in violation of General Statutes §§ 53a-8 and 53a-54a, and two counts of felony murder in violation of General Statutes § 53a-54c. He received a sentence of 120 years in prison. The relevant factual history was recounted extensively in our Supreme Court's decision disposing of the petitioner's direct appeal, and we set forth only the most relevant facts.[2]

"In 1990, the [petitioner], Stefon Morant and Jeff Rochler were partners engaged in the sale of drugs . . . . Ovil Ruiz, the state's key witness [in the petitioner's and Morant's trials], was involved in various aspects

---

[1] The petitioner's second amended petition for a writ of habeas corpus set forth six counts, and the court's memorandum of decision addressed all six counts. On appeal, the petitioner clearly states that he is appealing only from the habeas court's judgment regarding counts three, five and six of his petition. We therefore address only those three counts.

[2] The Supreme Court reversed the trial court's judgment in part and remanded the case with direction to combine the petitioner's conviction of the two counts of felony murder with his conviction of the two counts of intentional murder and to vacate the felony murder sentences. *State* v. *Lewis*, 245 Conn. 779, 819, 717 A.2d 1140 (1998). In all other respects, the judgment was affirmed. Id.

of the drug operation . . . . As part of this drug operation, one of the victims, Ricardo Turner, stored drugs and drug money in his second floor apartment at 634 Howard Avenue, New Haven. The other victim, Edward Lamont Fields, was Turner's roommate. . . .

"[On] October 10, 1990, Ruiz . . . overheard a discussion between the [petitioner] and Morant in which they discussed the possibility that Turner might abscond with the money and drugs in his apartment . . . . [The petitioner], Morant and Ruiz drove to Howard Avenue. They arrived at the victims' apartment building at approximately 4 a.m. [on October 11, 1990]. . . . [The petitioner] then told Ruiz to keep the car running while [he] and Morant went upstairs to get the money and drugs. . . . [Both victims were shot.]

"On the same morning of October 11, 1990, Diane Basilicato, who lived in the second floor front apartment of the victims' apartment building on Howard Avenue, returned home and entered her apartment shortly after 4 a.m. . . . Within a few minutes of entering her apartment, Basilicato heard five or six loud 'bangs,' and heard two people running down the stairs and out of the building." *State* v. *Lewis*, 245 Conn. 779, 782–84, 717 A.2d 1140 (1998).

The petitioner's first habeas petition was dismissed on September 19, 2001, and this court dismissed his appeal from that judgment. See *Lewis* v. *Commissioner of Correction*, 73 Conn. App. 597, 808 A.2d 1164 (2002), cert. denied, 262 Conn. 938, 815 A.2d 137 (2003). On January 11, 2008, the petitioner filed his second amended petition for a writ of habeas corpus. The habeas court denied the petition on February 5, 2008. On February 11, 2008, the petitioner filed a petition for certification to appeal from the judgment of the habeas

court pursuant to General Statutes § 52-470.[3] The court denied his petition for certification to appeal on February 13, 2008. On February 27, 2008, the petitioner appealed to this court following the denial of his petition for certification to appeal. Further facts will be set forth as necessary.

We set forth the appropriate standard of review. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion." *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). To prove an abuse of discretion, the petitioner must demonstrate "that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) Id., 616. "If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." Id., 612.

## I

The petitioner's first claim on appeal is that the habeas court improperly concluded that he failed to prove that the state suppressed evidence of its agreement with Ruiz at his criminal trial. Although the petitioner requests de novo review and claims that the court placed "an improper burden of proof upon [him]

---

[3] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

to establish [that] the evidence was suppressed"; (internal quotation marks omitted); the petitioner also relies on this court's decision in *Walker* v. *Commissioner of Correction*, 103 Conn. App. 485, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007), and we therefore construe his claim to be that the court improperly concluded that he failed to prove suppression of exculpatory evidence by the state at his criminal trial in violation of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The following additional facts are relevant. At the petitioner's trial in 1995, Ruiz testified that he did not receive anything in exchange for his testimony from the prosecuting attorney or from the investigating detective, Vincent M. Raucci, Jr. On January 30, 2007, Ruiz testified at a hearing on Morant's habeas petition. At that hearing, Ruiz refused to answer most of the questions posed by defense counsel by invoking his right against self-incrimination under the fifth amendment to the United States constitution. When defense counsel asked him, however, whether he was worried that the state might prosecute him for the murders of the victims, Ruiz stated that he had been told that nothing was going to happen to him if he cooperated. He testified that when he "went to the Feds, now, all of a sudden, indeed, they want to prosecute [him] on somethin' else." When the state attempted to cross-examine Ruiz, he again invoked his constitutional rights and refused to answer. The state declined to grant immunity to Ruiz in exchange for his testimony, and the court denied defense counsel's motion to order the granting of immunity.

In addition to this evidence, the petitioner presented the habeas court with evidence that already was available to him when he filed his first habeas petition. A report prepared by the Federal Bureau of Investigation (FBI) on February 22, 1996, shows that Ruiz told FBI

agents that he was threatened by Raucci and the prose-
cuting attorney, that he lied at the petitioner's trial and
that individuals named Frank Parese, Raul Luciano,
Armando Luciano and a "Colombian only known as
'Loco' " murdered the victims while Ruiz waited in the
car. In another FBI report, prepared on October 24,
1996, Ruiz stated that he was present during the mur-
ders with Raul Luciano and Eloy Cruz, also known as
Popi or Flocco, but that Ruiz actually killed Fields and
Turner. Additionally, at a hearing held on October 25,
1999, in connection with one of Morant's petitions,[4]
Michael Sweeney, a former member of the New Haven
police department, testified that he and Raucci ques-
tioned Ruiz on January 13 and 14, 1991, and that Raucci
revealed certain facts regarding the murders to Ruiz.
Sweeney also testified that Raucci spent time alone in
the room with Ruiz and that Ruiz changed his statement
about the murders several times.

In its memorandum of decision, the habeas court
concluded that the petitioner failed to prove that the
state had suppressed evidence against him. The court
referred to the earlier portion of its memorandum,
addressing a different count of the petition, where it
questioned the truthfulness of Ruiz' January 30, 2007
testimony and found that Ruiz had a "long history of
recanting and repudiating his recantations."[5] The court
additionally found that the petitioner failed to produce
any evidence from state officials at the habeas trial to

[4] The petitioner submitted into evidence a transcript from October 25,
1999, as exhibit forty-one.

[5] The habeas court cited *Morant* v. *State*, 68 Conn. App. 137, 142, 151–54,
802 A.2d 93 (denial of petition for new trial), cert. denied, 260 Conn. 914,
796 A.2d 558 (2002). The court in that case described Ruiz' statements
addressed previously and added the following: "On February 16, 1997, Ruiz
provided another statement to the FBI, in which he said that his prior two
statements were false and that his testimony at the petitioner's trial was
the truth. He claimed that [the petitioner] had pressured him to fabricate
the other statements." Id., 154.

prove that the state in fact suppressed evidence of an agreement with Ruiz.

"To establish a claim under *Brady*, the petitioner must establish that (1) the evidence allegedly suppressed was favorable to the petitioner, either because it was exculpatory or impeaching, (2) the evidence was suppressed by the state, either wilfully or inadvertently and (3) prejudice resulted from its absence." *Wilson* v. *Commissioner of Correction*, 104 Conn. App. 224, 232, 932 A.2d 481 (2007)

"The question of whether there existed an agreement between [a witness] and the state is a question of fact . . . . When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, supra, 103 Conn. App. 490–91. "A petitioner bears the burden of proving the existence of an agreement between the state or police and a state's witness. . . . Any such understanding or agreement between any state's witness and the state police or state's attorney clearly falls within the ambit of the *Brady* principles. . . . An unexpressed intention by the state not to prosecute a witness does not." (Citations omitted.) Id., 493.

In support of his claim that the habeas court improperly found that there was no evidence of an agreement between the state and Ruiz, the petitioner refers to Ruiz' January 30, 2007 testimony, Sweeney's October 25, 1999

testimony and the FBI reports. The petitioner also notes that Ruiz was never prosecuted by the state for a different double murder.

We conclude that the habeas court's finding was not clearly erroneous. The petitioner did not present testimony at the hearing on his habeas petition from either Ruiz or anyone from the office of the state's attorney involved in the alleged deal. Contra *Walker* v. *Commissioner of Correction*, supra, 103 Conn. App. 491–92 (recanting witness, attorney for witness and detective testified at petition hearing). The fact that Ruiz has not been charged with the murders of Turner and Fields, or any other murders, is not evidence of an agreement between him and the state. See *State* v. *Rucker*, 177 Conn. 370, 376, 418 A.2d 55 (1979) (unexpressed intention by state not to prosecute witness is not understanding or agreement within ambit of *Brady* principles). Additionally, although Sweeney's testimony suggests that Raucci disclosed information to Ruiz during the questioning, it does not provide any evidence of a deal between Ruiz and the state.

The only evidence, therefore, offered by the petitioner to establish the existence of an agreement between Ruiz and the state was Ruiz' January 30, 2007 testimony and the statement Ruiz gave to FBI agents in 1996. The habeas court concluded that Ruiz' credibility was undermined greatly by his numerous inconsistent statements. We defer to the court's credibility determination and conclude, on the basis of our review of the evidence presented, that its finding that the petitioner failed to prove the existence of an agreement between Ruiz and the state was not clearly erroneous. See *State* v. *Floyd*, 253 Conn. 700, 740, 756 A.2d 799 (2000) (trial court's factual finding that there was no implied agreement must stand where reasonable fact finder would not be compelled to conclude that there was implied agreement between witness and state).

## II

The petitioner next claims that the habeas court improperly concluded that habeas corpus relief cannot be granted on a freestanding or independent claim that the petitioner's conviction was a product of perjured testimony.[6]

The following additional facts are relevant. In his petition, the petitioner alleged that Ruiz' January 30, 2007 testimony that he had a deal with the state demonstrated that Ruiz committed perjury at the petitioner's 1995 trial when he stated that he did not receive anything in exchange for his testimony.[7] To support this claim, in addition to Ruiz' January 30, 2007 testimony

[6] The court proceeded to construe this count as an actual innocence claim and concluded that the petitioner failed to establish that he was actually innocent of the crimes of which he was convicted. We will not review that conclusion here because the petitioner set forth a separate count specifically alleging that newly discovered evidence established his actual innocence, which the habeas court reviewed in a separate part of its memorandum. We therefore will consider evidence of alleged perjury in part III, in which we review the court's conclusion regarding the petitioner's actual innocence claim.

[7] The following are the petitioner's exact allegations as set forth in the third count of his habeas petition:

"The petitioner states there is newly discovered evidence to support that said conviction was the product of perjured testimony. . . .

"The state's key witness, Ovil Ruiz, testified under oath that he received [no promises] from the state in exchange for his testimony against the petitioner at the criminal trial. . . .

"The state's key witness, Ovil Ruiz, on January 30, 2007 under oath testified to the contrary, and was *specific* that he had an agreement with the state not to be prosecuted if he testified against the petitioner at the criminal trial. . . .

"The state never rebutted the truth of that testimony of Ovil Ruiz, or cross-examined him concerning that testimony. . . .

"There is also evidence in the form of a letter written by Ovil Ruiz, and analyzed by the [FBI] where Ruiz admits that his criminal trial testimony [was] false. . . .

"There is further evidence that Ovil Ruiz in fact authored criminal trial exhibit Q1 (a threatening letter) to bolster the believability of his trial testimony against the petitioner." (Citation omitted; emphasis in original.)

and the FBI reports discussed previously, the petitioner offered into evidence a letter purportedly sent to him by Ruiz in March, 1996, in which Ruiz expressed guilt over testifying against the petitioner and stated that he had been forced to do so by the prosecuting attorney, Raucci and others. We emphasize that the petitioner did not claim in his petition that the alleged perjury resulted in a violation of his constitutional rights and failed entirely to explain how it affected the outcome of his trial.

The habeas court concluded that because the petitioner had not alleged that the perjured testimony came through any intentional action by the state or through any deficient performance of his trial counsel, his perjury claim was an unadorned, newly discovered evidence count that might support a petition for a new trial, but that is not an independent claim on which relief can be granted in a habeas proceeding.

The question before us is whether the court properly concluded that an independent or freestanding claim of perjury is not a claim on which habeas corpus relief can be granted. It is a question of law over which we have plenary review. "Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review." *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003). "Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 65 Conn. App. 172, 175, 782 A.2d 201 (2001).

We conclude that the court's conclusion is logically and legally correct. Our Supreme Court stated in *Summerville* v. *Warden*, 229 Conn. 397, 641 A.2d 1356 (1994), that the "standards that generally govern a habeas corpus petition seeking a new trial are well established. . . . To mount a successful collateral attack on his conviction, a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal." (Citations omitted; internal quotation marks omitted.) Id., 419. Our Supreme Court also has held that "[h]abeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. . . . Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 815, 786 A.2d 1091 (2002).

The pro se petitioner appears to argue here, on appeal, that the allegedly perjured testimony violated his due process rights.[8] He did not, however, allege a violation of any constitutional right in connection with his perjury claim before the habeas court. He similarly did not explain to the habeas court, in his petition or at his habeas hearing, precisely how the alleged perjury affected the outcome of his trial. We are unaware of any precedent where either this court or our Supreme Court has held that an allegation of perjury, unaccompanied by an antecedent constitutional violation or an

---

[8] The petitioner specifically claims that his right to due process of law under the federal and state constitutions was violated "when the habeas court erroneously concluded that a perjury claim, without alleging action of the state was not an independent claim upon which relief can be granted via habeas corpus . . . ."

explanation of how that perjury affected the result of a trial, is a proper ground for seeking habeas relief.[9]

We therefore conclude that the habeas court's conclusion that the perjury count of the petitioner's complaint failed to state a claim on which habeas corpus relief can be granted is legally and logically correct.

### III

In his third and final claim on appeal, the petitioner asserts that the habeas court improperly concluded that the newly discovered evidence did not contribute to a showing of his actual innocence of the crimes. In his brief, the petitioner lists all the relevant evidence that was before the court and argues that, considered together, it demonstrates his actual innocence. We have

---

[9] In his appellate brief, the petitioner relies on a case from the United States Court of Appeals for the Second Circuit, in which a habeas petitioner sought relief on the ground that his murder conviction was obtained on the perjured testimony of a purported witness to the crime. See *Ortega* v. *Duncan*, 333 F.3d 102, 103–104 (2d Cir. 2003). We note that the petitioner in that case, unlike the petitioner in the present case, alleged in his habeas petition that the allegedly false testimony at his trial violated his due process rights. Id., 105–106.

Our conclusion that a freestanding perjury allegation is not a proper habeas claim is supported by the *Ortega* court's statement that "[a] claim based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief *absent an independent constitutional violation occurring in the underlying state criminal proceeding.* . . . We have held that *a showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief.* . . . Instead, *when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 108.

Our review of the petitioner's habeas petition and the transcript from the hearing shows that the petitioner did not claim before the habeas court that the alleged perjury violated his due process rights under the legal test outlined in *Ortega* or in any other state or federal case. In the absence of such a claim, a habeas court is unable to determine whether an allegedly false testimony was material and whether, but for that testimony, the petitioner would most likely not have been convicted.

reviewed all of the evidence on which the petitioner relies, and we agree with the habeas court.

The following additional facts are relevant. The petitioner introduced into evidence more than fifty items. He emphasizes the following evidence on appeal. At his criminal trial, the petitioner attempted to introduce a police report prepared by Detective Vaughn Maher on November 24, 1990, which shows that Lieutenant Francisco Ortiz told Maher that an informant told Ortiz that an individual named Michael Cardwell confessed to murdering the victims. According to the report, Michael Cardwell told the informant that he murdered the victims while his brother, Vincent Cardwell, stayed outside to whistle when no apparent activity was on the street. Ortiz testified at the petitioner's trial, but the trial court sustained the state's objection to the introduction of the report into evidence because it concluded that the petitioner had not established that Michael Cardwell was an unavailable witness. *State* v. *Lewis*, supra, 245 Conn. 793–95, 799. Our Supreme Court held that the trial court did not abuse its discretion in excluding the report. Id., 809.

At a hearing on his habeas petition on December 3, 2007, the petitioner introduced a memorandum from the office of the state's attorney dated June 9, 2005, which stated that Basilicato, who testified at the petitioner's criminal trial and who resided in the same building as the victims at the time of the murders, identified in a photographic array the man she had encountered in front of the building at approximately 4 a.m. on October 11, 1990. The petitioner also submitted Basilicato's testimony from April 25, 1995, which indicated that the man Basilicato met on October 11, 1990, was whistling at someone in one of the surrounding houses.[10] The

---

[10] Basilicato testified regarding the June 9, 2005 identification at the petitioner's January 11, 2008 habeas hearing and at Morant's January 30, 2007 habeas hearing.

petitioner additionally introduced into evidence police reports from October 11, 1990. The relevant parts of those reports established that Michael Cardwell knew and was linked to the victims though drug dealing activities.

The habeas court concluded that the newly introduced evidence did not contribute significantly to showing the petitioner's actual innocence. The court reasoned that the evidence that Basilicato identified Michael Cardwell as the person who had whistled outside the building on October 11, 1990, contradicted the evidence that the petitioner sought to admit at his criminal trial, namely, the informant's statement that Michael Cardwell confessed to murdering the victims while Vincent Cardwell stood outside the building whistling. The court also noted that all the police reports that the petitioner introduced into evidence were fully available at the time of his trial.

In addition, the habeas court carefully reviewed what it construed to be a claim that the evidence of Ruiz' perjured testimony demonstrated that the petitioner was actually innocent. See footnote 6. The court concluded that Ruiz' January 30, 2007 statement that he had a deal with the state did not clearly and convincingly establish the petitioner's actual innocence. The court found that the letter purportedly sent by Ruiz to the petitioner, in which Ruiz expressed guilt over testifying at the petitioner's trial, was of dubious credibility because it was unsworn. The court also relied on *State v. Lewis*, supra, 245 Conn. 779, in which our Supreme Court stated that Ruiz was subject to extensive cross-examination by defense counsel at the petitioner's trial regarding his mental health, including schizophrenia, the fires that he had started in prison and the antipsychotic drugs that he was prescribed. Id., 790. The court concluded that given the strong attacks on Ruiz' credibility during the cross-examination that did not cause

the jury to reject his testimony, it is unlikely that the jury would have rejected Ruiz' testimony with the additional evidence.

"In *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997), this court held that the proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 80–81, 967 A.2d 41 (2009).

Having reviewed the entire record before us, we conclude that the habeas court properly concluded that the petitioner could not prevail on his claim of actual innocence. The November 24, 1990 report was not admitted into evidence at the petitioner's trial. Even if it were admissible and even if we were to assume that the person Basilicato identified in the photographic array was Michael Cardwell and that her identification was reliable, we also would agree with the court that the newly discovered evidence that Michael Cardwell was whistling in front of the building where the victims were murdered contradicts the November 24, 1990 report, according to which Michael Cardwell committed the murders while his brother stood outside the building whistling. Evidence submitted through the police reports indicating that Michael Cardwell was associated

with the victims through drug dealing also fails to establish that the petitioner is actually innocent of the crimes of which he was convicted.

We similarly cannot conclude that the petitioner is actually innocent on the basis of what he claims to be Ruiz' false testimony at his criminal trial. It is impossible for us to conclude, on the basis of all the evidence before us, which statements by Ruiz are false and which are truthful. We are therefore unable to determine whether Ruiz testified falsely at the petitioner's criminal trial, when he testified that he had no agreement with the state, or at the January 30, 2007 hearing, when he testified that the state told him that nothing was going to happen to him if he cooperated. Ruiz testified at the petitioner's trial against the petitioner, and, although he offered differing versions of the October 11, 1990 events since that trial, he also stated in 1997 that his testimony at the petitioner's trial was the truth and that the petitioner had pressured him to fabricate the other statements. See footnote 5. In light of the fact that Ruiz was subjected to extensive cross-examination at the petitioner's trial and the jury nonetheless credited his testimony, we cannot conclude that no reasonable fact finder would find the petitioner guilty of the crimes when faced with newly discovered evidence of Ruiz' lack of credibility.

Moreover, all the evidence considered together is contradictory and does not demonstrate the petitioner's actual innocence. Evidence that Michael Cardwell or Vincent Cardwell was whistling in front of the victims' building, in combination with all of Ruiz' inconsistent statements and recantations, does not establish by clear and convincing evidence that the petitioner is actually innocent. Ruiz never named Michael Cardwell or Vincent Cardwell as the perpetrator of the crimes in any of the inconsistent statements he gave throughout the years. We therefore agree with the court's conclusion

that the petitioner has failed to demonstrate by clear and convincing evidence that he actually is innocent of the crimes for which he was convicted and that no reasonable juror would find him guilty.

We conclude that the petitioner has not demonstrated that the issues raised with regard to his claims are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further.

The appeal is dismissed.

In this opinion the other judges concurred.