******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LUIS DIAZ *v.* COMMISSIONER OF CORRECTION
(AC 34760)

DiPentima, C. J., and Alvord and Mintz, Js.

*Argued April 8—officially released September 9, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Michael Zariphes*, assigned counsel, for the appellant (petitioner).

*Adam E. Mattei*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Howard S. Stein*, senior assistant state's attorney, and *Craig P. Nowak*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Luis Diaz, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because the court improperly (1) rejected his claim of ineffective assistance of trial counsel, and (2) concluded that he failed to prove that the state suppressed exculpatory evidence at his criminal trial in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The petitioner also claims that the habeas court abused its discretion in denying his motion for rectification and request for an evidentiary hearing pursuant to *State* v. *Floyd*, 253 Conn. 700, 756 A.2d 799 (2000). We dismiss the petitioner's appeal.

The facts giving rise to this case are set forth in *State* v. *Diaz*, 302 Conn. 93, 25 A.3d 594 (2011). "On the evening of January 11, 2006, the victim, Philip Tate, was shot and killed outside a bar known as the Side Effect West in the city of Bridgeport. Thereafter, the [petitioner] was arrested and charged with murdering the victim [in violation of General Statutes § 53a-54a], carrying a pistol without a permit [in violation of General Statutes § 29-35,] and criminal possession of a pistol or revolver [in violation of General Statutes § 53a-217c]. In March, 2006, Corey McIntosh gave a statement to the police indicating that the [petitioner] had been the shooter. At that time, McIntosh was on federal probation and had received a three year suspended sentence for possessing narcotics in Connecticut. McIntosh testified at the [petitioner's] trial that he had seen the [petitioner] outside the Side Effect West immediately before the shooting and had heard shots as he entered the bar. He then ran out the back door and saw the [petitioner] running down the street with a gun in his hand. Additional state narcotics charges were pending against McIntosh at the time of trial. He testified that, while no promises had been made in connection with the pending charges, he was hoping to receive some consideration in exchange for his testimony.

"At some point after July, 2006, Eddie Ortiz wrote a letter to the prosecutor's office indicating that he had information about the murder. He was incarcerated at the time and stated in his letter that he was looking for some consideration in exchange for his testimony. Ortiz testified at the [petitioner's] trial that he had seen the [petitioner] shoot the victim. He also testified that, during the trial, he had been placed in the same holding cell as the [petitioner], who said to him, 'You know what I did' and 'I know where you live at.' In addition, Ortiz testified that the [petitioner] had offered him $5000 not to testify. He further testified that the prosecu-

tor's office had not promised him anything in exchange for his testimony and that he had been told that it would be up to a judge whether he would receive any benefit, such as a sentence modification. He had expectations, however, that his testimony would be taken into consideration.[1]

"Approximately six months after the murder, James Jefferson asked his attorney to inform Harold Dimbo, a detective with the Bridgeport police department, that Jefferson had information about the murder. Jefferson, who was incarcerated in Connecticut on domestic violence charges at the time, was subject to lifetime parole in New York in connection with a conviction on narcotics charges in that state. Dimbo visited Jefferson in prison and Jefferson agreed to give a statement about the shooting. Dimbo made no promises to Jefferson. In September, 2006, the domestic violence charges were dismissed for lack of evidence. Thereafter, Jefferson testified at the [petitioner's] trial that he had seen the [petitioner] and the victim outside Side Effect West immediately before the shooting. He also saw the [petitioner] shoot at someone, but he did not see the victim at that point. At the time of trial, Jefferson was incarcerated in Connecticut for violating his parole in New York.

"McIntosh, Ortiz and Jefferson were the only witnesses who identified or implicated the [petitioner] as the shooter. The [petitioner's] girlfriend, Shenisha McPhearson, testified that the [petitioner] had been with her at her apartment at the time of the shooting. The state presented no physical evidence to tie the [petitioner] to the shooting and the gun used in the shooting was never recovered." (Footnotes omitted.) Id., 95–97.

Following the trial, the jury returned a verdict of guilty on all three counts, and on June 8, 2007, the court sentenced the petitioner to seventy years incarceration. The petitioner appealed directly to our Supreme Court pursuant to General Statutes § 51-199 (b) (3), and the court upheld the conviction. Id., 93.

In April, 2012, the petitioner filed a third amended petition for a writ of habeas corpus, which included claims of ineffective assistance of trial counsel and substantive constitutional violations of the petitioner's due process rights under the state and federal constitutions and *Brady* v. *Maryland*, supra, 373 U.S. 83.[2] Following a three day evidentiary hearing, the habeas court denied the habeas petition on May 16, 2012, and subsequently denied the petitioner's petition for certification to appeal on May 30, 2012. The petitioner appealed to this court.

We begin by setting forth the standard of review and legal principles that guide our resolution of the petitioner's appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first bur-

den is to demonstrate that the habeas court's ruling constituted an abuse of discretion. Abuse of discretion is the proper standard because that is the standard to which we have held other litigants whose rights to appeal the legislature has conditioned upon the obtaining of the trial court's permission. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If this burden is not satisfied, then the claim that the judgment of the habeas court should be reversed does not qualify for consideration by this court." (Internal quotation marks omitted.) *Patterson* v. *Commissioner of Correction*, 150 Conn. App. 30, 34, 89 A.3d 1018 (2014). Having set forth the appropriate standard of review, we next consider each of the petitioner's claims.

I

The petitioner first claims that the habeas court improperly rejected his claim of ineffective assistance of his trial counsel. He argues that trial counsel rendered ineffective assistance by failing to investigate and present the testimony of Clifton Waiters, Jacqueline Cooper, and Eugene Browne, who would have "injected a great deal of reasonable doubt as to the petitioner being the perpetrator of the charged crimes."[3] We are not persuaded.

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . . A reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (Citation omitted; internal quotation marks omitted.) *Ramey* v. *Commissioner of Correction*, 150 Conn. App. 205, 209–210, 90 A.3d 344, (2014).

In his petition for a writ of habeas corpus, the petitioner identified Waiters, Cooper, and Browne as "third party culpability witness[es]." It is well established that "a defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. . . .

The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Galarza*, 97 Conn. App. 444, 464, 906 A.2d 685, cert. denied, 280 Conn. 936, 909 A.2d 962 (2006).

In rejecting the petitioner's ineffective assistance of counsel and third party culpability claim, the habeas court found that "the evidence presented here clearly indicates that there was no . . . direct connection to any third party." The court considered the testimony of each of the three witnesses[4] before concluding that trial counsel was not deficient by failing to present that evidence, and that it was not prejudicial to the petitioner for that evidence not to have been presented at trial. Now before us, the petitioner broadly argues that the witnesses' respective testimonies "would all have been helpful in establishing the asserted defense of misidentification [and] may have even helped in establishing a third party culpability defense." Despite this assertion, he points to no testimony that directly connects a third party to the crime. "The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. . . . In the absence of that showing by [a] petitioner, we are unable to conclude that [the petitioner] was prejudiced by counsel's failure to interview the [witness]." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 141 Conn. App. 626, 635, 62 A.3d 554, cert. denied, 308 Conn. 947, 67 A.3d 290 (2013). Accordingly, the petitioner has not established that he was prejudiced by the actions of his trial counsel, and he cannot prevail on his claim of ineffective assistance of counsel. We therefore conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal from its denial of this claim.

## II

The petitioner also claims that the habeas court improperly concluded that he failed to prove that the state suppressed exculpatory evidence at his criminal trial in violation of *Brady* v. *Maryland*, supra, 373 U.S. 87. Specifically, the petitioner maintains that "the discrepancy between the prosecutor's representations to the jury during his closing argument [at the petitioner's criminal trial] in [April, 2007] that Ortiz was promised flat out no benefit and the prosecutor's later consent to Ortiz' sentence modification application [in September, 2007] represents an undisclosed implied and/or informal understanding/agreement between Ortiz and the

state that if he testified favorably, the state would consent to his sentence modification application and then support him at the hearing on such application." We are not persuaded.

"The law governing the state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established. The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United States constitution and the Connecticut constitution. *Brady* v. *Maryland*, [supra, 373 U.S. 86]; *State* v. *Simms*, 201 Conn. 395, 405 [and] n.8, 518 A.2d 35 (1986). In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material." (Internal quotation marks omitted.) *State* v. *Guilbert*, 306 Conn. 218, 271, 49 A.3d 705 (2012). "It is well established that [i]mpeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused. . . . A plea agreement between the state and a key witness is impeachment evidence falling within the definition of exculpatory evidence contained in *Brady*." (Citations omitted; internal quotation marks omitted.) *State* v. *Floyd*, supra, 253 Conn. 736–37.

"The question of whether there existed an agreement between [a witness] and the state is a question of fact. . . . When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 116 Conn. App. 400, 407, 975 A.2d 740, cert. denied, 294 Conn. 908, 982 A.2d 1082 (2009).

In support of his position, the petitioner directs us to (1) the prosecutor's closing argument wherein he advised the jurors that Ortiz was "promised nothing" and "flat out told [that he would] get no benefit" for his testimony; (2) Ortiz' sentence modification application revealing the prosecutor's signature concurring with the application; (3) Ortiz' subsequent modification of his sentence several months after the petitioner was sentenced; and (4) Ortiz' August, 2007 letter to the prosecutor thanking him for "fulfilling his promise." The habeas court considered all of this evidence, as well as testimony from the prosecutor and trial counsel, and found that there was "no proof that there was an under-

standing either in the courthouse with [the prosecutor] or afterwards" that Ortiz was going to be granted some kind of benefit for testifying. Instead, the court found that all that Ortiz was told with respect to a possible sentence modification was that if he "[made] a pitch to the judge for what [he] testified to [after the petitioner's trial] and that . . . judge would consider it, then so be it."[5] We defer to the court's credibility determination and factual findings and conclude, on the basis of our review of the evidence, that the court's finding that the petitioner failed to prove the existence of an agreement between Ortiz and the state was not clearly erroneous. See *Lewis* v. *Commissioner of Correction*, supra, 116 Conn. App. 408. Accordingly, the habeas court properly denied certification on this ground of the petitioner's claim.

## III

Finally, the petitioner argues that the habeas court abused its discretion in denying the petitioner's motion for rectification and request for an evidentiary hearing pursuant to *State* v. *Floyd*, supra, 253 Conn. 700.[6] We are not persuaded.

The following procedural history is necessary for our resolution of this claim. While the present appeal was pending, the petitioner filed a motion for rectification with this court seeking an evidentiary hearing to add to the record a transcript of a sentence modification hearing that had occurred in *State* v. *Ortiz*, Superior Court, judicial district of Fairfield, Docket No. CR-06-0213538 (August 20, 2007). This court forwarded the motion to the habeas court pursuant to Practice Book § 66-5,[7] and the habeas court denied the motion. The petitioner filed a motion for review with this court, and we granted the petitioner's motion for review, but denied the relief requested therein without prejudice to "brief the propriety of the filing of his motion for rectification and his request for an evidentiary '*Floyd* type' hearing in his brief on the merits."

Practice Book § 66-5 defines a motion for rectification as "a motion seeking *corrections* in the transcript . . . ." (Emphasis added.) "[W]e review the actions of the habeas court on the record and may not consider extraneous material later submitted directly to us . . . ." *Young* v. *Commissioner*, 104 Conn. App. 188, 194, 932 A.2d 467 (2007), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008). Here, it is clear that the petitioner knew about Ortiz' sentence modification at the time of the habeas court's hearing on the petitioner's third amended petition for a writ for habeas corpus, and that he did not enter or attempt to enter a transcript of the Ortiz resentencing hearing into evidence at that time. Instead, the petitioner first submitted the transcript to the court approximately six months *after* the court denied the habeas petition and the petition for certification to appeal. The petitioner cannot use a motion for

rectification as a method of introducing new evidence to the habeas court after the hearing that he knew about during the habeas hearing. See *State* v. *Hamlin*, 90 Conn. App. 445, 878 A.2d 374 (declining defendant's request to remand for an evidentiary hearing pursuant to *Floyd* because record demonstrated that defendant was aware, prior to the suppression hearing and trial, of the information he sought to include in the record), cert. denied, 276 Conn. 914, 888 A.2d 86 (2005). Accordingly, the habeas court properly concluded that it could not accept or consider the transcript following its rendering judgment, and we affirm the denial of the motion for rectification.

For the foregoing reasons we conclude that the petitioner has not demonstrated that the issues he has raised in the petition for certification to appeal are debatable among jurists of reason, that a court could resolve those issues differently or that the questions raised deserve encouragement to proceed further. Consequently, the petitioner has failed to demonstrate that the court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The record reveals that in September, 2007, Ortiz submitted a sentence modification application. The prosecutor concurred with the sentence modification request. The court granted the application, and reduced Ortiz' sentence from eight years imprisonment to three years to serve.

[2] The petitioner also claimed actual innocence and ineffective assistance of appellate counsel. The actual innocence claim was withdrawn by the petitioner, and, because evidence had already commenced, the habeas court dismissed the claim with prejudice on May 16, 2012. The ineffective assistance of appellate counsel claim also was dismissed by the habeas court on May 16, 2012. The petitioner has not challenged these rulings on appeal.

[3] In support of his ineffective assistance of counsel claim, the petitioner also claims that trial counsel should have presented the testimony of Jill Bellao at the jury trial. A review of the habeas petition reveals that the petitioner identified eighteen witnesses that trial counsel failed to call. Bellao was not included on that list, nor was she specifically identified anywhere else in the petition. "It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Fulton* v. *Commissioner of Correction*, 126 Conn. App. 706, 713–14, 12 A.3d 1058, cert. denied, 300 Conn. 937, 17 A.3d 473 (2011). Although Bellao testified before the habeas court regarding the petitioner's employment around the time of the shooting, the petitioner never presented the habeas court with the opportunity to address the issue of whether trial counsel's failure to call Bellao in the underlying criminal trial was deficient or prejudicial. "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim. . . . To review [the claim] now would amount to an ambuscade of the [habeas] judge. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Internal quotation marks omitted.) Id., 714. Accordingly, we do not consider the petitioner's claim on appeal with respect to Bellao.

[4] The court concluded that Waiters' testimony "at best indicates that he believed that the individual he saw run by him may have been dark skinned,"

and that there had "been no evidence presented . . . as to how, even if presented—since there was additional evidence at trial as to the potential issue with the skin tone or skin color of the shooter—how . . . Waiters' testimony in addition to that other testimony would have in and of itself changed the outcome of the hearing." Similarly, the court found that "even accepting everything . . . [Cooper] said, all she said was that the victim claimed, they set me up" and that there was "no real likelihood that it would have had any effect on the outcome of the trial because all it would seem to indicate was that the victim expected to meet somebody there, and then what he expected to happen didn't happen." Finally, the court noted that Browne's testimony was simply that Browne "wasn't at the area of the shooting . . . [that he] didn't know the victim, and [that he] had nothing to do with it."

[5] As General Statutes § 53a-39 (b) makes clear, it is "the sentencing court or judge," and *not* the state's attorney, who "may, after hearing and for good cause shown, reduce the sentence" of a defendant.

[6] "Pursuant to *State* v. *Floyd*, supra, 253 Conn. 700, a trial court may conduct a posttrial evidentiary hearing to explore claims of potential *Brady* violations . . . when a defendant was precluded from perfecting the record due to new information obtained after judgment. . . . In order to warrant such a hearing, a defendant must produce prima facie evidence, direct or circumstantial, of a *Brady* violation unascertainable at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Ouellette*, 295 Conn. 173, 182 n.7, 989 A.2d 1048 (2010).

[7] Practice Book § 66-5 provides in relevant part: "The appellate clerk shall forward the motion for rectification . . . and the opposition, if any, to the trial judge who decided, or presided over, the subject matter of the motion for rectification . . . for a decision on the motion. If any party requests it and it is deemed necessary by the trial court, the trial court shall hold a hearing at which arguments may be heard, evidence taken or a stipulation of counsel received and approved. The trial court may make such corrections or additions as are necessary for the proper presentation of the issues raised or for the proper presentation of questions reserved. The trial judge shall file the decision on the motion with the appellate clerk. . . ."