******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL HOLBROOK *v.* COMMISSIONER
OF CORRECTION
(AC 41165)

DiPentima, C. J., and Alvord and Flynn, Js.

*Syllabus*

The petitioner, who had been convicted of manslaughter in the first degree
with a firearm in connection with the shooting death of the victim,
sought a writ of habeas corpus, claiming, inter alia, that his prior habeas
counsel, D, had rendered ineffective assistance by declining to pursue
a claim that the petitioner's criminal trial counsel, R, had rendered
ineffective assistance when R chose not to call a witness, T, in the
petitioner's second criminal trial after his first trial had ended in a
mistrial. The habeas court concluded that D had exercised professional
judgment in winnowing down a list of twenty-seven possibly viable
claims he had included in his habeas petition and had made a reasonable
strategic decision not to pursue the ineffective assistance claim as to
R. The habeas court further concluded that R's decision not to call
T to testify at the second criminal trial did not constitute deficient
performance but, rather, was a strategic decision. The court reasoned
that T was impeachable by virtue of her prior personal connection with
the petitioner and two inconsistent written statements that she had
given to the police concerning the shooting. In her first statement, T
stated that there had been a fight and that the petitioner indicated that
he had been hit, but in her second statement she denied that a fight
occurred and did not remember the petitioner stating that he had been
hit. The habeas court rendered judgment denying the habeas petition,
from which the petitioner, on the granting certification, appealed to this
court. *Held*:

1. The habeas court properly determined that the petitioner failed to prove
that D rendered ineffective assistance by failing to pursue a claim that
R had been ineffective for failing to call T as a witness; R's strategic
decision not to call T did not constitute deficient performance, as R
inferentially made a presumptively prudential decision on whether to
use T's second statement to the police, which could have led to further
impeachment evidence as to T, R's trial strategy in not calling T to the
witness stand was influenced by the fact that the state's witnesses had
considerable baggage in terms of prior criminal histories, inconsistent
statements, and losses of memory and recantations, which resulted in
their prior written signed statements being admitted into evidence for
substantive purposes, and the admission into evidence of T's statements
would have rendered less persuasive a defense argument that the state's
witnesses were all over the place, could not remember and were incon-
sistent.

2. There was no merit to the petitioner's claim that the prosecution sup-
pressed evidence that was favorable to him when it allegedly failed to
disclose that it had delayed making a plea offer to an eyewitness until
after the eyewitness testified in the petitioner's second criminal trial;
the petitioner failed to present any credible evidence that there was an
agreement between the state and the witness that the state failed to
disclose, the petitioner's claim was not distinctly raised in his habeas
petition, and his counsel conceded at oral argument before this court
that there is no authority for the proposition that the state is obligated
to make a plea offer to a witness who is himself facing criminal charges
before giving testimony in a case.

Argued January 10—officially released April 2, 2019

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Hon. John F. Mulcahy,
Jr.*, judge trial referee; judgment denying the petition,

from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, assigned counsel, for the appellant (petitioner).

*C. Robert Satti, Jr.*, supervisory assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Emily D. Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Michael Holbrook, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he failed to prove (1) ineffective assistance of his prior habeas counsel, and (2) that the state suppressed exculpatory evidence at his criminal trial in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).[1] We affirm the judgment of the habeas court.

The following facts and procedural history surrounding the petitioner's conviction were set forth by this court in our decision on direct appeal affirming the petitioner's conviction: "John Fred Dean was shot and killed inside a Bridgeport nightclub known as the Factory. The state charged the [petitioner] . . . with Dean's murder. In 2003, the [petitioner's] first jury trial ended in a mistrial. After a second trial, in 2004, the jury found the [petitioner] not guilty of murder but found him guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a). The jury also made a finding that the [petitioner] had committed a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. The trial court rendered judgment in accordance with the verdict and sentenced the [petitioner] to a total effective term of thirty-five years incarceration." *State* v. *Holbrook*, 97 Conn. App. 490, 492, 906 A.2d 4, cert. denied, 280 Conn. 935, 909 A.2d 962 (2006).

In June, 2007, the petitioner filed a petition for a writ of habeas corpus, which was denied by the court, *T. Santos*, *J.*, following a trial. On appeal, this court affirmed the denial of the petition. *Holbrook* v. *Commissioner of Correction*, 149 Conn. App. 901, 87 A.3d 631, cert. denied, 311 Conn. 952, 91 A.3d 464 (2014).

In June, 2014, the petitioner, who was then self-represented, filed a petition for a writ of habeas corpus. Thereafter, represented by counsel, the petitioner filed an amended petition alleging ineffective assistance of his trial counsel, Attorney Frank J. Riccio, for declining to call Cherise Thomas as a witness; ineffective assistance of prior habeas counsel, Attorney Michael Day, for failing to pursue a claim that trial counsel was ineffective for failing to call Thomas as a witness; and the failure of the state to produce exculpatory information to the petitioner. The court, *Hon. John F. Mulcahy, Jr.*, judge trial referee, denied the petition. The court thereafter granted the petition for certification to appeal. This appeal followed.

I

The petitioner claims that the court erred in concluding that Day did not render ineffective assistance for declining in the prior habeas proceeding to pursue a

claim that Riccio was ineffective for failing to call Thomas as a witness in the underlying criminal trial. We do not agree.

"It is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings . . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 823, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

"[When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . Therefore, as explained by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of [trial] counsel must essentially satisfy *Strickland* twice: he must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his [trial] counsel was ineffective. . . . We have characterized this burden as presenting a herculean task . . . ." (Citations omitted; internal quotation marks omitted.) *Mukhtaar* v. *Commissioner of Correction*, 158 Conn. App. 431, 438–39, 119 A.3d 607 (2015).

The habeas court noted that Day, "in an abundance of caution," included twenty-seven claims in his habeas petition, but upon further analysis pursued only six of the listed claims, which did not include the claim of ineffective assistance of trial counsel for failure to call Thomas as a witness. The habeas court concluded that Day's procedure of "exercising professional judgment . . . in winnowing down from the long list of claims initially thought to be possibly viable" did not constitute deficient performance. We will not disturb the court's finding that Day's decision not to pursue the claim at issue was a reasonable strategic decision. "[A] reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirma-

tively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." (Citation omitted; internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 632–33, 126 A.3d 558 (2015). Additionally, "the failure to pursue unmeritorious claims cannot be considered conduct falling below the level of reasonably competent representation." (Internal quotation marks omitted.) *Tillman* v. *Commissioner of Correction*, 54 Conn. App. 749, 756–57, 738 A.2d 208, cert. denied, 251 Conn. 913, 739 A.2d 1250 (1999).

The court further found that *Strickland*'s prejudice prong was not satisfied because, "based on the previous analysis of trial counsel's tactical decision regarding the Thomas statements," a reasonable probability did not exist that the result of the first habeas trial would have been different had Day pursued the claim that Riccio was ineffective for failing to call Thomas as a witness. In analyzing the merits of the underlying claim of ineffective assistance of trial counsel, the court concluded that Riccio, who had represented the petitioner in both criminal trials and who had died before the petitioner brought his second petition for a writ of habeas corpus, was "seasoned," and was an "exceedingly experienced, skilled and proficient criminal defense attorney."[2]

The court concluded that Riccio's strategic decision not to call Thomas to testify at the second criminal trial did not constitute deficient performance. Thomas was impeachable by virtue of her prior personal connection with the petitioner, whom she had known for years. Thomas gave two statements on different dates to the police, recounting the events that occurred at the Factory nightclub on the night of the shooting. Both statements were admitted as full exhibits at the second habeas trial. The second habeas court found that the two statements that Thomas had given to the police on separate dates were inconsistent. In the first statement, Thomas said there had been a fight and that the petitioner indicated that he had been "hit," but in her second statement she denied that a fight occurred and did not remember the petitioner stating that he had been hit. The court concluded that Thomas' first statement to the police that the petitioner had told her that he had been hit might "lend support" to the state's position that the petitioner had been involved in a physical fight with the victim, Dean, which precipitated the shooting that caused Dean's death. The court concluded that Riccio, who had been present during both of Thomas' statements to the police, inferentially made a "presumptively prudential decision" on whether to use Thomas' second statement that could have led to further impeachment evidence as to Thomas.

The court noted that Riccio's trial strategy in not calling Thomas to the witness stand was influenced by the fact that the state's witnesses brought considerable " 'baggage' " in terms of prior criminal histories, inconsistent statements, losses of memory and recantations, and that where those witnesses recanted or professed some loss of memory their prior written signed statements were admitted for substantive purposes under authority of *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). In his summation to the jury, Riccio pointed out the inconsistencies in the testimony of the state's witnesses. Riccio testified in the first habeas trial that "I've never seen it [*Whelan*] used as much as it was in this particular case." The second habeas court stated in its decision: "An offer and admission of the Thomas statements by the defense would introduce yet another (in the court's view, material) inconsistency, resulting quite likely in another *Whelan* admission, this time involving a defense witness. Such would render less persuasive a defense argument in summation that the state's witnesses were all over the place, could not remember, and were inconsistent."

The court concluded that Riccio, who had heard and observed Thomas at the time of her statements, made a strategic decision not to have Thomas testify that "should not now be second-guessed." *Michael T.* v. *Commissioner of Correction*, supra, 319 Conn. 632–33. As we have noted previously, reasonable strategic choices made after a thorough investigation are virtually unchallengeable. Id. After a careful review of the record, we conclude that the habeas court properly determined that the petitioner had failed to prove his claim of ineffective assistance of habeas counsel.

## II

We next turn to the petitioner's claim that the court improperly rejected his claim that the prosecution suppressed evidence favorable to him in violation of *Brady* v. *Maryland*, supra, 373 U.S. 83. Specifically, the petitioner claims that the prosecution failed to disclose that it had declined to make any plea offers to Gary Browning, an eyewitness who testified for the state, regarding his charges of robbery until he testified in the petitioner's 2004 criminal trial. We disagree.

"Due process principles require the prosecution to disclose to the defense evidence that is favorable to the defendant and material to his guilt or punishment. . . . In order to obtain a new trial for improper suppression of evidence, the petitioner must establish three essential components: (1) that the evidence was favorable to the accused; (2) that the evidence was suppressed by the state—either inadvertently or wilfully; and (3) that the evidence was material to the case, i.e., that the accused was prejudiced by the lack of

disclosure. . . .

"The state's failure to disclose an agreement with a cooperating witness may be deemed to be the withholding of exculpatory evidence. Impeachment evidence falls within *Brady*'s definition of evidence favorable to an accused. . . . Impeachment evidence is broadly defined in this context as evidence that could potentially alter the jury's assessment of a witness' credibility. . . . Specifically, we have noted that [a] plea agreement between the state and a key witness is impeachment evidence falling within the . . . *Brady* doctrine." (Citations omitted; internal quotation marks omitted.) *Marquez* v. *Commissioner of Correction*, 330 Conn. 575, 592, 198 A.3d 562 (2019). "Any . . . understanding or agreement between any state's witness and the state police or the state's attorney clearly falls within the ambit of *Brady* principles." (Internal quotation marks omitted.) *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 152–53, 10 A.3d 578, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011). "[A]n unexpressed intention of the state not to prosecute a witness does not fall within the ambit of the *Brady* principles concerning disclosure by the prosecution of evidence favorable to an accused." (Internal quotation marks omitted.) *State* v. *Rucker*, 177 Conn. 370, 376, 418 A.2d 55 (1979).

"The question of whether there existed an agreement between [a witness] and the state is a question of fact . . . . When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 116 Conn. App. 400, 407, 975 A.2d 740, cert. denied, 294 Conn. 908, 982 A.2d 1082 (2009). "Furthermore, the burden is on the defendant to prove the existence of undisclosed exculpatory evidence." *State* v. *Floyd*, 253 Conn. 700, 737, 756 A.2d 799 (2000). "Whether the petitioner was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Internal quotation marks omitted.) *Peeler* v. *Commissioner of Correction*, 170 Conn. App. 654, 689, 155 A.3d 772, cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017).

The petitioner contends that the prosecution delayed making a plea offer to Browning until after Browning testified in the petitioner's 2004 criminal trial. This claim rests on a very slender reed. The first habeas court found Browning not to be a credible witness, and he did not testify before the second habeas court. The only evidence of the allegation of a delayed plea offer is in a statement by Browning made in the first habeas trial in which he stated: "No, they wouldn't give me an offer until after I testified." The habeas court made no finding that the prosecution had made any statement to that effect, and the petitioner's claim is not distinctly raised in his habeas petition. At oral argument before this

court, the *Brady* claim morphed into a claim that the state had waited to make a plea offer to Browning, the cooperating witness, until after he gave testimony. However, not only is there nothing in the petition that raises this claim distinctly, there is no finding by the habeas court that the prosecution ever told Browning that an offer of a sentence would be made in return for his guilty plea, but not until after his testimony. The petitioner's counsel conceded at oral argument that there is no authority for the proposition urged by the petitioner that the state is under an obligation to make a plea offer to a witness who is himself facing criminal charges before he gives testimony in a case. Here, the court made a finding that "the petitioner has failed to present any credible evidence that there was an actual or implied agreement between the state and Gary Browning that the state failed to disclose." The petitioner's claim of a *Brady* violation is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner also claims that the court improperly concluded that he had failed to prove that his trial counsel was ineffective for declining to call a certain witness to testify at the underlying criminal trial. In its memorandum of decision, the habeas court dismissed the claim of ineffective assistance of trial counsel on the grounds that it was barred by res judicata and that it was successive. The court also determined that the claim was barred by laches and, alternatively, that the petitioner could not prevail on the merits. At oral argument before this court, the petitioner's counsel conceded that the claim of ineffective assistance of trial counsel, by itself, was successive. In light of this concession, we do not examine the merits of the petitioner's claim of ineffective assistance of trial counsel separately but only to the extent that his claim of ineffective assistance of prior habeas counsel is premised on such a claim. See *Mukhtaar* v. *Commissioner of Correction*, 158 Conn. App. 431, 438–39, 119 A.3d 607 (2015).

[2] The court in the petitioner's second habeas trial had ample evidence of the seasoned nature of Riccio's representation, including a transcript of Riccio's testimony in the petitioner's first habeas case that was admitted as a full exhibit in the second habeas proceeding. In the petitioner's first criminal trial, Riccio raised enough doubt that the jury was "hung," unable to agree on a verdict. In the petitioner's second criminal trial, Riccio succeeded in convincing the jury to return a not guilty verdict as to murder, and the petitioner was found guilty of the lesser included and less serious offense of manslaughter in the first degree in violation of § 53a-55a. Riccio testified at the first habeas trial that he had had thirty-five to forty murder trials in Connecticut state courts, had tried twelve federal criminal cases to conclusion and had been involved in approximately 100 other federal criminal cases. The record shows that Riccio had wide experience and had twice obtained results in two successive criminal trials in which the petitioner was not convicted of the most serious crime with which he was charged, namely, murder.